**In the Matter of Robert John LOVE, Debtor–Appellant.**

**No. 90–3329.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1991.

Decided Feb. 26, 1992.

James G. Richmond, U.S. Atty., J. Philip Klingeberger, Asst. U.S. Atty., Dyer, Ind., Gary R. Allen, Gary D. Gray, Joel A. Rabinovitz (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for appellee.

Rebecca Harper, UAW–GM Legal Services Plan, Marion, Ind. (argued), for debtor-appellant.

Before WOOD, Jr.,* RIPPLE and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This case raises interesting questions regarding the distinction between the good faith standard for filing a Chapter 13 petition and the good faith standard for the confirmation of a Chapter 13 bankruptcy

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after oral argument in this case.

plan. The debtor in this case, Robert John Love, filed a petition for relief under Chapter 13 of the Bankruptcy Code. The bankruptcy court determined that Love did not file the bankruptcy petition in good faith. Accordingly, the bankruptcy judge dismissed the debtor's petition pursuant to Section 1307(c) of the Bankruptcy Code. 11 U.S.C.A. § 1307(c). The district court affirmed this dismissal and Love appeals this district court order.

## I.

## BACKGROUND[1]

The evidence before the bankruptcy court indicated that Love was involved with a group that protested the payment of income taxes. This involvement began in 1981. In April 1981, as a member of this protest group, Love submitted to his employer W–4 forms claiming he was exempt from the withholding of any federal income taxes. Love continued to submit false W–4 forms at various times during 1981, 1982 and 1983. In May of 1983 the Internal Revenue Service ("IRS") instructed Love's employer to withhold from Love's wages an amount appropriate for a single person. The IRS also told the employer to stop accepting W–4 forms from Love. Love, aware of this action by the IRS, continued to submit signed falsified W–4 forms to his employer.

While associated with this tax protest group, Love refused to pay federal income taxes. Accordingly, Love waited until December of 1986 to file federal income tax forms for the 1981 through 1985 tax years.

When the IRS sent Love correspondence with regard to his tax liabilities, Love forwarded the correspondence to the tax protest group. Love would then pay this tax protest group approximately $50.00, and this group would draft a response to the IRS. These responses refuted Love's obli-

gation to pay taxes. Some of these responses were signed by Love and others were not. The last response prepared by the tax group was on September 30, 1986, (approximately two months before Love filed an emergency petition for bankruptcy relief). This September 30th response was a petition for appeal to the United States Tax Court. This petition was prepared at Love's request and signed by Love. Love testified that he was not involved with the tax protest group after the group prepared this September 30th petition.

In response to Love's continued refusal to pay income taxes, the IRS initiated levies against Love's assets. The first of these levies was initiated sometime prior to 1986. This initial levy was for $1,000.00. The IRS obtained this $1,000.00 by levying Love's credit union account and by garnishing his wages in two separate pay checks. Then in 1986, the IRS implemented a $75.00 a week levy against Love's wages. Shortly thereafter, on December 3, 1986, Love filed an emergency Chapter 13 bankruptcy petition. Then on December 18, 1986, Love filed a document entitled "Original Petition." Love also filed the following documents on December 18, 1986: "Chapter 13 Statement"; "Schedule of Debts and Debtor's Proposed Plan of Dealing With Creditors"; and "Debtor's Plan." (As a matter of convenience we will also refer to these three documents collectively as Love's original Chapter 13 plan.) In December of 1986 after beginning bankruptcy proceedings, Love filed tax returns for the 1981 through 1985 tax years. These returns indicated a substantial tax liability.

Love's original Chapter 13 plan lists 13 creditors. Eleven of these creditors were only listed for notice purposes because Love was only indebted to two of the listed creditors: Barklays Bank of Delaware and the IRS. This plan lists Love's debt to the

---

1. The bankruptcy court conducted a hearing where it considered the motion for dismissal of Love's petition for lack of good faith. At this hearing a deposition and other documents were admitted as substantive evidence pursuant to a stipulation. Although the parties stipulated to the admissibility of this evidence, this deposition and the other documents were not made part of the record on appeal. (The record does contain some short excerpts of this deposition that we have considered on appeal.) Because this evidence is not part of the appellate record, we have relied on the hearing transcripts, the documents contained in the record, and the bankruptcy court's factual findings in rendering this decision on appeal.

IRS as follows: a priority debt of $10,-234.00 and an estimated $8,000.00 nonpriority debt. This equals a total estimated debt of $18,234.00 to the IRS. The debt to Barklays was for a dinette set, on which Love claimed to owe $1,600.00. The original plan, therefore, lists an estimated total debt of $19,834.00. This plan proposes a $90.00 per week payment to be distributed to the trustee. The plan, as required by 11 U.S.C.A. §§ 507, 1322(a)(2), proposes a 100% payment of priority debts. In addition, this plan proposes a 10% payment of the estimated $8,000 general unsecured debt to the IRS. These payments were to last no longer than five years.

Love filed an amended plan on February 17, 1987. This plan proposes a $90.00 per week payment ceasing at the earlier of the two following events: 52 months *or* after Love paid 100% of the secured and priority claims and 10% of the unsecured nonpriority government claims.

There is a dispute with regard to the actual debt and priority debt listed on Love's original plan. That is, with regard to Love's tax debt, the IRS filed a Proof of Claim on January 7, 1987, indicating a tax liability of $20,947.64, as opposed to Love's estimated $18,234.00. This Proof of Claim states claims in the following amounts: a $957.25 secured claim which consisted of prepetition interest on unpaid taxes; a $17,-529.44 unsecured priority claim for unpaid taxes and prepetition interest; and a $2,460.95 general unsecured claim for unpaid tax penalties. The IRS Proof of Claim demonstrates a substantially larger priority debt, a correspondingly lower unsecured debt, and a larger total debt than that acknowledged by Love in his original plan. Moreover, it lists a tax lien not listed on Love's initial petition.

Love filed an objection to this Proof of Claim on July 7, 1987. This objection does not refute the classification of prepetition interest as a priority debt. Moreover, Love's modified plan concedes that prepetition interest for the 1981, 1982, 1983 and 1984 tax years is a priority claim and not a general nonpriority claim as reflected in the original plan.

In Love's original plan he listed his total assets as follows: a $1,600 dinette set, $1,500 in household goods, $500 in clothing and jewelry, and $1,267.04 in General Motors Stock. At a hearing before the bankruptcy judge, however, Love stated that his jewelry consisted of "three cheap watches and two stainless steel rings." And, Love stated that he gave the dinette set to Ms. Erman. No other household goods were identified at this hearing.

Love's original plan lists his gross income as totalling $530 per week, which equals $27,560 per year. This calculation excludes any overtime, vacation pay, and bonuses even though Love traditionally earned fairly substantial amounts of overtime and vacation pay. Indeed, Love's previous year's income was listed as $44,-303.57, and his 1984 tax return shows that his income for the year before that was $37,720.

This original plan also fails to list at least three life insurance policies. Moreover, after these policies were brought to Love's attention, Love still failed to produce them or list them on an amended plan.

On January 30, 1987, the IRS filed an Objection to Confirmation of Debtor's Plan and a Motion to Dismiss the Debtor's Case. On September 21, 1987, the bankruptcy court conducted a hearing focusing on the issue of dismissal of the Chapter 13 petition on the grounds that Love lacked good faith in filing this petition. The bankruptcy court granted IRS's motion for dismissal and, accordingly, indefinitely postponed a confirmation hearing with regard to the Chapter 13 plan.

Love asked the bankruptcy court to reconsider its dismissal for lack of good faith. The bankruptcy judge rejected this motion. Love then appealed this decision to the District Court for the Northern District of Indiana, and Judge Miller upheld the bankruptcy court's dismissal. Love appealed the district court's decision to affirm the bankruptcy court decision.

Because the bankruptcy court appropriately applied the totality of circumstances test in making its good faith determination, and because it was not clearly erroneous

for the bankruptcy judge to find that Love lacked good faith in filing the Chapter 13 petition, we affirm the district court's decision.

## II.

## ANALYSIS

■ The bankruptcy court's good faith finding is a purely factual finding evaluated under the clearly erroneous standard of review. *In re Smith*, 848 F.2d 813, 816, n. 2 (7th Cir.1988). The clearly erroneous standard requires this court to give great deference to the bankruptcy court, the trier of fact. Under this standard, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as trier of fact. *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir.1988). Indeed, reversal under the clearly erroneous standard is only warranted if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citations and quotation marks omitted).

■ The bankruptcy court's and district court's conclusions of law, on the other hand, are subject to *de novo* review on appeal. *In re Newman*, 903 F.2d 1150, 1152 (7th Cir.1990). The lower courts' conclusions with regard to the legal standard applicable to good faith determinations are questions of law reviewed under the *de novo* standard. *See United States v. Singer Mfg. Co.*, 374 U.S. 174, 193, 83 S.Ct. 1773, 1783, 10 L.Ed.2d 823 (1963).

■ Chapter 13 does not explicitly contain a good faith requirement for the filing of a petition. Nevertheless, Section 1307(c) of the Bankruptcy Code does state that Chapter 13 petitions may be dismissed "for cause." 11 U.S.C.A. § 1307(c). This court

has indicated that lack of good faith is sufficient cause for dismissal under Chapter 13. *In re Smith*, 848 F.2d at 816, n. 3.

■ The bankruptcy court is often called to make two separate good faith determinations in Chapter 13 proceedings. The first is the good faith determination at issue in this case: whether the debtor filed the Chapter 13 petition in good faith. *See id.; see also* 11 U.S.C.A. § 1307(c). The second is whether a Chapter 13 plan, which lists projected debt and proposes a schedule of payment to creditors, is proposed in good faith. *See, e.g., Smith*, 848 F.2d at 816–22; 11 U.S.C.A. § 1325(a). The finding of a lack of good faith in filing the petition under Section 1307(c) can lead to the dismissal and termination of the bankruptcy proceedings, as it did in this case, or it can lead to an order to convert the case and proceed under Chapter 7 of the Bankruptcy Code. 11 U.S.C.A. § 1307(c). The lack of good faith in the filing of the plan under Section 1325(a), on the other hand, does not always lead to such a harsh result. That is, Section 1325 outlines the terms for confirmation of a bankruptcy plan, not the terms for a dismissal of the Chapter 13 proceedings. 11 U.S.C.A. § 1325. Accordingly, a bankruptcy court's rejection of a plan for lack of good faith does not necessarily lead to dismissal or conversion. *See* 11 U.S.C.A. 1307(c)(4).

### A. *Standard for Determining Good Faith*

■ This court has not reviewed a good faith finding with respect to the filing of a Chapter 13 petition.[2] This court has, however, had several opportunities to review good faith determinations with regard to the filing of Chapter 13 plans. *In re Schaitz*, 913 F.2d 452, 453–56 (7th Cir. 1990); *Smith*, 848 F.2d at 816–22; *In re Rimgale*, 669 F.2d 426, 431–33 (7th Cir.

---

**2.** In *Smith* a party did move for dismissal under Section 1307(c), alleging that the debtor lacked good faith in filing the Chapter 13 petition. *Smith*, 848 F.2d at 815. Nevertheless, the bankruptcy court in that case did not discuss whether or not the petition was filed in good faith. *Id.* at 816. Moreover, although this court compared the good faith standards under Sections 1307(c) and 1325(a) in footnote 3 of the *Smith* opinion, *id.* at 816, n. 3, the opinion's textual analysis and holding was limited to a discussion of the bankruptcy court's finding that the debtor filed the plan in good faith. *See id.* at 814–22.

1982). In evaluating good faith necessary for the confirmation of a Chapter 13 plan, this court has refused to adopt a specific test or definition of good faith. Instead, this court has held that good faith is a term incapable of precise definition, and, therefore, the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court. *In re Rimgale*, 669 F.2d at 431. As such, we have directed the bankruptcy courts to look at the totality of circumstances and, thereby, make good faith determinations on a case-by-case basis. *Schaitz*, 913 F.2d at 453; *Smith*, 848 F.2d at 817. The good faith determination with regard to the filing of a Chapter 13 petition is also a fact intensive inquiry to be determined by looking at the totality of circumstances. *See Smith*, 848 F.2d at 816, n. 3.

■ Both Love and the IRS agree that the totality of circumstances test is the appropriate standard. However, each disagree as to who should bear the burden of proving lack of good faith and they disagree as to how onerous this burden will be. The IRS argued in its brief that Love, the debtor, has the burden of proving good faith. In making this argument the IRS relied on decisions that state the burden of proof under Section 1325(a). *See In re Caldwell*, 895 F.2d 1123, 1226 (6th Cir. 1990); *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir.1986); *In re McKissie*, 103 B.R. 189, 191 (Bankr.N.D.Ill.1989) (this case focuses on whether the debtor filed a petition in bad faith; however, the court relied on Section 1325 when stating the burden of proof). The courts, however, are not in complete agreement that the debtor bears the burden of proving good faith even under Section 1325. *In re Keffer*, 87 B.R. 509, 514 (Bankr.S.D.Ohio 1988). More importantly, the wording of Sections 1325 and 1307 are distinguishable so that even if the debtor has the burden of proving good faith under Section 1325 it does not mean that the debtor must bear the same burden under Section 1307's provisions. This is because Section 1325(a)(3) explicitly states that a plan shall be confirmed if it "has been proposed in good faith." On the other hand, Section 1307(c) does not specifical-

ly require that a debtor file a petition in good faith. Instead, Section 1307(c) provides that a petition may be dismissed "for cause." Dismissal for cause cannot mean that a debtor must show an absence of cause; it can only mean that the party moving for dismissal must demonstrate cause. *In re Klein*, 100 B.R. 1004, 1008 (N.D.Ill.1989). As such, the burden was on the IRS to show lack of good faith.

■ The IRS further argues that egregious prepetition conduct, such as Love's prepetition tax protestor conduct, gives rise to a presumption that the debtor lacked good faith when filing the Chapter 13 petition. The IRS cites *In re LeMaire*, 898 F.2d 1346, 1352 (8th Cir.1990) and *Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir. 1986) to support this proposition. It is not clear, however, that either the Court of Appeals for the Eighth or Fourth Circuits intended to create such a presumption in these decisions. In any event, for the reasons discussed below, this court will not create such a presumption.

If we were to create a presumption when a debtor's debt arose from egregious prepetition conduct, then a debtor with egregious prepetition conduct would be foreclosed from bankruptcy unless the debtor could come forward with evidence that her later activities demonstrate good faith. Some debtors with sincere intentions in filing for Chapter 13 relief might have difficulty meeting this burden. Accordingly, such a presumption has the possibility of unjustifiably foreclosing certain debtors from Chapter 13 relief.

Furthermore, such a presumption would lessen the benefits of the case-by-case, totality of circumstances test applicable to good faith determinations. The purpose of a case-by-case, totality of circumstances test is to allow the bankruptcy judge, who is in the best position to evaluate the witnesses' credibility against the other evidence, to weigh the evidence in making the good faith determinations. *See Schaitz*, 913 F.2d at 456; *see also Rimgale*, 669 F.2d at 431–32. The presumption suggested by the IRS would lessen the benefits of

the totality of circumstances test by forcing the bankruptcy court to place an undue emphasis on prepetition conduct, which is just one of the many factors relevant to the good faith determination.

While the IRS argues that this court should place a heavy burden on Love because of his prepetition conduct, Love argues that the heavy burden should run the other way. That is, Love argues that we should only allow dismissal of a petition for lack of good faith in limited circumstances because the dismissal of the petition is a harsh remedy that can be initiated before a full hearing regarding the propriety of the proposed plan. Recognizing the need to protect against a premature use of this harsh remedy, some courts have, in fact, required a more stringent showing of lack of good faith when evaluating the filing of a petition as opposed to a plan. In fact, several courts have stated that dismissal under Section 1307(c) for lack of good faith should only be required in extraordinary circumstances. *See, e.g., In re Robinson,* 18 B.R. 891, 893 (Bankr.D.Conn.1982).

■ Because dismissal is harsh we agree that the bankruptcy court should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a). Nevertheless, the bankruptcy court in this case did not make a premature dismissal. Instead, the court conducted an evidentiary hearing and carefully weighed the evidence before dismissing the petition under Section 1307(c). Considering that the totality of circumstances test is designed to give discretion to the bankruptcy judge and considering that the bankruptcy judge in this case carefully examined the facts, we see no need to impose an extraordinary circumstances requirement.

Courts have also devised other methods besides requiring extraordinary circumstances in an attempt to limit the harsh remedy of dismissal under Section 1307(c). For example, in *Carolin Corp. v. Miller,* 886 F.2d 693, 700–01 (4th Cir.1989), the Court of Appeals for the Fourth Circuit held that dismissal of a Chapter 11 petition

for lack of good faith is only permissible when the court finds both subjective bad faith and objective futility of any possible reorganization. Love argues that this court should follow this reasoning, thereby requiring that a bankruptcy court find objective futility before dismissing a Chapter 13 petition for lack of good faith. However, *Carolin* involved a Chapter 11 proceeding, as did the other court of appeals decisions that Love cited for this proposition. *See In re Little Creek Dev. Co.,* 779 F.2d 1068, 1073 (5th Cir.1986); *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984). Granted, Chapter 13 is the individual's analogue to Chapter 11's business reorganization provisions. *Schaitz,* 913 F.2d at 453. Nevertheless, as this court noted in *Schaitz,* the good faith analyses differ under Chapter 11 and Chapter 13 because businesses and individuals are obviously different. *Id.* Indeed, as a consequence of this difference between individuals and businesses, objective futility seems meaningless in the Chapter 13 context. Objective futility in the Chapter 11 context focuses on whether a business is capable of surviving after reorganization. *Carolin,* 886 F.2d at 701. This is not an issue in an individual bankruptcy filed under Chapter 13 because, ordinarily, an individual's survival is not related to what happens in the Chapter 13 proceeding. Furthermore, even if objective futility could be defined in a meaningful manner in the Chapter 13 context, such an absolute requirement would negate the benefits of a case-by-case analysis under the totality of circumstances test.

### B. *Factors Considered Under the Totality of Circumstances Test*

■ Having already determined that good faith under Section 1307(c) should be determined by looking to the totality of circumstances, the next question becomes what factors are appropriately considered under this test. As mentioned above, this court has not previously reviewed a bankruptcy court's good faith finding under Section 1307(c) of the Bankruptcy Code. This court has, however, evaluated good faith determinations made under Section 1325(a) of the Bankruptcy Code, and in

*Smith* this court emphasized the similarities between these two good faith inquiries. *Smith*, 848 F.2d at 816, n. 3. Indeed, the same policy embodies the two good faith evaluations. *See id.* That is, one of the primary purposes of the good faith evaluation in both contexts is to "force[ ] the bankruptcy court to examine 'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter]....'" *See id.* at 818 (quoting *Rimgale,* 669 F.2d at 431). At base, this inquiry often comes down to a question of whether the filing is fundamentally fair. *See Schaitz,* 913 F.2d at 453 ("the most fundamental and encompassing [factor when . evaluating good faith] is whether the debtor has dealt fairly with his creditors.") In other words, the focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions.

Bankruptcy courts have expressed some confusion and frustration with regard to the proper focus of this Chapter 13 good faith inquiry. *See, e.g., In re Guaranteed Retirement, Inc.,* 112 B.R. 263, 271–73 (Bankr.N.D.Ill.1990), *aff'd,* 119 B.R. 149 (N.D.Ill.1990). We realize that the standard of fundamental fairness does not provide a great deal of needed guidance. Unfortunately, however, we cannot completely alleviate the confusion and at the same time retain the advantages of the totality of circumstances test. This is because as our definition of good faith becomes more precise, the bankruptcy court has less discretion to weigh the evidence first hand in making good faith evaluations. In short, the downside of the totality of circumstances test is a degree of uncertainty.

One area of uncertainty is whether the good faith inquiry is an objective or a subjective inquiry. *Id.* at 271. The fact is, the good faith inquiry is both subjective and objective. That is, both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose

that was not in line with the spirit of the Bankruptcy Code are relevant to the good faith inquiry.

Moreover, the same evidence is often relevant to both an objective and subjective showing of unfairness. For example, if a debtor lies in his statement of assets and debts and if as a result of these misstatements one creditor will be disproportionately disadvantaged, this indicates objective unfairness. This same evidence, however, when coupled with other evidence, may also indicate that the debtor filed bankruptcy to thwart payment to a particular creditor, thereby indicating a subjective intent to unfairly abuse the spirit of the Bankruptcy Code.

■ Keeping in mind that the focus of the inquiry is fundamental fairness, the following nonexhaustive list exemplifies some of the factors that are relevant when determining if a Chapter 13 petition was filed in good faith: the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the · petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. *See In re King,* 126 B.R. 777, 781 (Bankr.N.D.Ill.1991) (involved good faith evaluation under 1307(c)); *In re McKissie,* 103 B.R. 189, 192 (Bankr.N.D.Ill. 1989) (same). *See also Schaitz,* 913 F.2d at 455–56 (discussing factors relevant to the good · faith determination under Section 1325(a)); *Smith,* 848 F.2d at 817–18 (same); *Rimgale,* 669 F.2d at 432 .(same).

### C. *Application of the Totality of Circumstances Test to the Facts*

■ The bankruptcy court looked to several of these factors when finding a lack of good faith. Indeed, there are several facts in the record which support this finding. One such fact is Love's prepetition activities as a tax protestor. Love became involved with a tax protestor group

in 1981. As a protestor Love refused to pay taxes in the 1981 through 1985 tax years. Love not only refused to file tax returns, but Love also falsified tax withholding forms by unjustifiably declaring exempt status. Also during his involvement with this protest group, Love received correspondence from the IRS with regard to his tax debts. Love would pay the protest group a fee, and the group would draft a response that reiterated Love's refusal to pay income taxes. According to Love's testimony, he continued his involvement with this protest group until the end of September 1986. This was a few months before Love filed for bankruptcy relief.

It was this prepetition protest activity which lead to Love's primary source of indebtedness. That is, by the time Love filed bankruptcy his debt to the IRS totalled approximately $20,000. · The only other debt listed by Love at the time of bankruptcy was a $1,600 debt for a dinette set. ·Not only was the IRS the primary creditor, but the debt owed to the IRS would have been nondischargeable under Chapter 7. Moreover, the IRS was also the only creditor that was not going to be paid in full as a result of the bankruptcy. That is, Love's plan proposes a 100% payment of a $1,600 debt to Barklays. In contrast, neither Love's original nor amended plan propose a 100% payment to the IRS. Instead, in these plans Love proposed to pay approximately 10% of the nonpriority debts owed to the IRS. Granted, these plans, as required by Sections 507 and 1322 of the Bankruptcy Code, propose a 100% payment of priority debts. See 11 U.S.C.A. §§ 507, 1322. Even so, it appears from Love's later filings that he either inadvertently or intentionally understated the amount of these priority debts in his original filings.

The bankruptcy court found that Love filed the Chapter 13 petition "for the purpose of avoiding a portion of his debt to the

IRS."· Bankruptcy Order at 5 (March 11, 1988). Indeed, the above evidence that Love was an active tax protestor and the fact that the bankruptcy would have a negative impact only on the IRS both seem to support the bankruptcy court's conclusion that Love filed bankruptcy to thwart the collection of taxes. Moreover, other evidence also supports this conclusion.

For example, the fact that Love waited until the IRS forced his hand by garnishing his wages before he filed for bankruptcy protection indicates that Love filed bankruptcy to avoid the payment of taxes to the extent possible. Furthermore, the fact that Love was not entirely forthcoming with either the IRS or the bankruptcy court is further evidence that Love used the bankruptcy proceedings to obstruct the collection of taxes. One such example of Love's failure to be forthright with the IRS and the court is Love's complete failure to list three insurance policies in the initial Chapter 13 plan filed weeks after Love filed for bankruptcy. Moreover, Love never modified this plan when these omissions were brought to his attention. Furthermore, a few weeks after Love filed his emergency Chapter 13 petition, in the Chapter 13 Statement that accompanied Love's original plan, Love based his disposable income projection on wages received in a 40–hour work week, even though Love had historically made several thousands of dollars in overtime, bonuses and vacation time.[3] The gravity of such an omission becomes clear when considering IRS's argument that if Love had accurately stated his projected income he could have paid 100% of IRS's unsecured claims with interest in the first year of the plan; instead, Love only proposed to pay 10% of these nonpriority debts over a period of years.

Bankruptcy is a remedy based in equity. See, e.g., In re Little Creek, 779 F.2d at 1072. As such, the good faith standard prevents debtors from manipulating the

---

**3.** Love notes in his brief that he only made $29,817.00 in 1987 because he had been put on indefinite sick leave in November of 1987. This information, however, is not part of the appellate record. In any event, the fact that Love made less than prior years due to an apparently

unanticipated sickness says nothing about what Love's projected disposable income was at the time he filed the petition. This is especially true considering that a $29,817.00 income, based on less that a full year's work, exceeds Love's projected income by more than $1,500.

Code for wrongful purposes. In accordance with this principle, this court stated in *Schaitz* that "the requirement of good faith should not be interpreted to permit 'manipulation of the statute [Chapter 13] by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a nondischargeable debt.'" *Schaitz,* 913 F.2d at 455 (quoting *Neufeld,* 794 F.2d at 153). Therefore, filing a Chapter 13 petition in order to thwart the payment of an otherwise nondischargeable income tax debt arising from the unlawful failure to pay income taxes was not one of the intended purposes of the bankruptcy provisions. Considering that there were ample facts supporting the bankruptcy court's finding that this was Love's purpose, the bankruptcy court's finding of lack of good faith is not clearly erroneous.

Moreover, the above evidence not only indicates that Love may have intended to use the bankruptcy provisions for an improper and fundamentally unfair purpose, but this same evidence also demonstrates objective unfairness to the IRS and the court. For example, the fact that the bankruptcy proceedings will have a negative impact on only one creditor, the IRS, indicates a degree of unfairness to the IRS. Furthermore, the fact that bankruptcy was filed soon after the IRS began to collect its debt through garnishment is further evidence of unfairness to the IRS, especially considering that these debts would be otherwise nondischargeable under Chapter 7. In addition, Love's misleading statements with regard to disposable income and the existence of insurance policies implicate unfairness to both the court and the creditors.

### D. *Alleged Errors of Law*

Looking at the above evidence we cannot say that the bankruptcy court's finding that Love lacked good faith in filing the Chapter 13 petition was clearly erroneous. Nevertheless, Love has raised several arguments which rather than questioning the bankruptcy court's factual finding, instead raise questions of law with regard to the bankruptcy and district courts' application of the totality of circumstances test. That is, Love argues that the bankruptcy and district courts erred as a matter of law when considering various facts under the totality of circumstances test. Most of these allegations focus on whether the lower courts erred in considering Love's prepetition conduct and if they erred in considering information contained in Love's Chapter 13 bankruptcy plan.

First, Love argues that the bankruptcy court put undue emphasis on Love's prepetition conduct. Love does not argue that prepetition conduct is irrelevant to the finding of lack of good faith. Rather, Love argues that this conduct is only relevant when there is a sufficient link between the debtor's prepetition conduct and the debtor's postpetition conduct.

██ We have already determined that as a matter of law the totality of circumstances test gives the bankruptcy court the discretion to weigh the facts on a case-by-case basis. We refuse to interfere with this discretion by requiring that the bankruptcy court make a specific finding that there is a sufficient link between the debtor's prepetition and postpetition conduct. Indeed, considering that Love continued to associate with the protestor group as late as September of 1986, just a few months before Love filed his Chapter 13 petition, the bankruptcy court did not err in determining that this prepetition activity was relevant to Love's motives at the time he filed the Chapter 13 petition.

Second, Love argues that the bankruptcy court made an error of law when it looked to the plan to support its finding that Love filed the petition in bad faith. That is, Love argues that by relying on information contained or omitted in the plan, the bankruptcy court ignored the distinction between the good faith necessary for the confirmation of a plan under Section 1325(a) of the Bankruptcy Code and the good faith necessary for the filing of a petition under Section 1307(c). Love asserts that this court requires these two good faith determinations be strictly separated.

Love is right in that the good faith analyses under Sections 1307(c) and 1325(a) are not identical. *See In re Madison Hotel Assoc.*, 749 F.2d 410, 425 (7th Cir.1984) (holding that the good faith analysis for evaluating a Chapter 11 petition and that in evaluating a Chapter 11 plan are distinct). That is, the good faith inquiry under Section 1307(c) is a broad inquiry focusing on the fairness involved in the initiation of Chapter 13 bankruptcy proceedings, while the good faith inquiry under Section 1325(c) is a more narrow inquiry focusing on the good faith with regard to the Chapter 13 plan. Indeed, it is possible that a bankruptcy court could properly find that the debtor filed a Chapter 13 petition in good faith, yet lacked good faith when filing the plan. In fact, the bankruptcy court in this case appropriately recognized this distinction when it stated that, "[w]hile a lack of good faith in the structuring of a particular plan may block confirmation of that plan, the petition itself is still viable, absent a showing that the entire petition was filed in bad faith." Bankruptcy Order at 4 (March 11, 1988).

Nevertheless, Love goes too far when arguing that these two inquiries are *entirely* separate. To the contrary, this court in *Smith* indicated that there will often be substantial overlap between these two inquiries. *Smith*, 848 F.2d at 816, n. 3. The fact that both inquiries focus on fundamental fairness and the fact that the debtor often files the petition and plan simultaneously, or in close temporal proximity to one another, leads to this overlap in good faith inquiries. *Id.* ("the procedural schedules dictate that the good faith inquir[ies] will often be the same....").

Considering this overlap, we cannot say that information, misstatements, and omissions contained in the plan are never relevant to the good faith inquiry with respect to the filing of a Chapter 13 petition. Rather, we agree with the bankruptcy and district courts' conclusion that information contained in the plan may be relevant when determining if the entire proceedings were initiated in good faith. *In re Robinson*, 18 B.R. at 893.

The bankruptcy court in this case determined that the failure to list insurance policies, as well as the failure to list all the debtor's disposable income, was relevant to establish the debtor's intent to use the bankruptcy system to avoid paying taxes. Motive can be inferred from post-petition conduct, as well as prepetition conduct. Therefore, it was appropriate for the bankruptcy court to infer motive from omissions and misstatements made in a plan that Love filed less than two weeks after he filed his emergency Chapter 13 petition.

Love makes yet another allegation of legal error to support his argument that the district court impermissibly looked to the Chapter 13 plan and accompanying documents in finding that Love lacked good faith when evaluating the Chapter 13 petition. That is, Love argues that discrepancies or omissions contained in the Chapter 13 plan are only relevant to the good faith filing of a Chapter 13 petition if there is a finding that the discrepancies or omissions are material or intentional. Because the bankruptcy court did not make such a finding, Love argues that the bankruptcy court erred when looking to misstatements and omissions. To support this argument Love attempts to analogize the requirements for a Chapter 13 dismissal to the requirements for denying a discharge in Chapter 7 proceedings.

Love cites *In re Agnew*, 818 F.2d 1284, 1290 (7th Cir.1987), as the only Seventh Circuit authority for this proposition. Granted, in *Agnew* this court did emphasize that discharge under 11 U.S.C.A. § 727(a)(4)(A) was only appropriate if there was evidence that a false oath or account was made knowingly and fraudulently. *Id.* at 1290. However, in *Agnew* the relevant statutory section specifically required such a showing. That is, as this court noted in *Agnew*, Section 727(a)(4)(A) explicitly states that discharge is warranted if " 'the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account....' " *Id.* (citing 11 U.S.C.A. § 727(a)(4)(A)). We fail to see the parallel between the specific language in Section 727(a)(4)(A), which explicitly requires know-

ing and fraudulent falsification, and the broad language in Section 1307(c), which allows dismissal "for cause."

As we have emphasized above, the totality of circumstances test is designed to allow the bankruptcy court, the fact finder, to weigh all the factors before it in making a good faith determination. Accordingly, we see no need to place a strict requirement that the bankruptcy court make a finding of materiality, fraud or misrepresentation in considering any misstatements or omissions in the plan. Moreover, we can assume that in weighing all the evidence before it the bankruptcy court considered whether or not the omissions and misstatements contained in the plan were material and intentional. This is particularly true in this case where the bankruptcy court indicated that Love's omissions and misstatements demonstrated a continued intent to avoid paying taxes to the government.

Love makes one final allegation in support of the proposition that the bankruptcy court incorrectly looked to information contained in the plan and accompanying documents in determining that Love lacked good faith when filing the petition. That is, Love argues that his failure to accurately list disposable income in the Chapter 13 plan has no relevance until the trustee or allowed secured claimant objects to the confirmation of the plan. Because the IRS failed to make such an objection, Love argues that the bankruptcy court erred when it looked to Love's listed disposable income in making its good faith inquiry.

Love cites Section 1325(b) in support of this argument. Section 1325(b) reads as follows: "If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan ... the plan provides all of the debtor's projected disposable income to be received in the three year period...." 11 U.S.C.A. § 1325(b)(1)(B).

Granted, Section 1325(b) indicates that the application of disposable income to pay the debts can be pivotal to the confirmation of a Chapter 13 plan once there is an objection. Nevertheless, saying that something

is relevant to one inquiry does not mean that it is not relevant to other inquiries. Indeed, Section 1325 in no way indicates that the disposable income listed in the plan is *only* relevant after objection to the plan. As such, we do not find Love's argument on this issue convincing. Accordingly, the bankruptcy court did not err when it considered Love's listed disposable income in making its good faith determination.

 Love's last allegation of legal error is that the district court erred when it looked to facts not specifically mentioned by the bankruptcy court when upholding the bankruptcy court's finding of lack of good faith. Love cites *In re Excalibur Auto. Corp.*, 859 F.2d 454, 460–61 (7th Cir.1988), and *In re Neis*, 723 F.2d 584, 589–90 (7th Cir.1983), for this proposition. These cases, however, are distinguishable. In *Excalibur* the district court on appeal decided a factual issue not addressed by the bankruptcy court. *Excalibur*, 859 F.2d at 460–61. Deciding a factual question on appeal not considered by the lower court is very different from looking to the entire record in order to find further support for a lower court's factual findings and inferences.

*Neis* is also distinguishable. In *Neis* the district court on appeal did not simply refer to facts to support the bankruptcy court's factual findings and inferences. Instead, in that case the district court made additional factual findings that, in effect, contradicted the bankruptcy court's conclusions. *Neis*, 723 F.2d at 589. Unlike the situation in *Neis*, the district court in this case did not make new factual inferences which contradicted the bankruptcy court's factual inferences and findings. Rather, the district court in this case cited facts in the record which lent further support to the bankruptcy court's factual inference that Love was using the bankruptcy process in order to thwart the collection of taxes.

*Excalibur* and *Neis* stand for the proposition that a reviewing court should not make new factual findings. Nevertheless, this does not mean it is error for a reviewing court to look to facts in the record not

specifically mentioned by the fact finder when such facts support the fact finder's factual findings and inferences. Indeed, reviewing courts should look to *all* the evidence in the record in determining whether a factual finding is clearly erroneous. *Sears, Roebuck*, 839 F.2d at 309 (reversal under the clearly erroneous standard is only warranted if "the reviewing court *on the entire evidence* is left with the definite and firm conviction that a mistake has been committed." (emphasis added, citations and quotation marks omitted)). Accordingly, it is not error for this court, nor was it error for the district court, when upholding a factual finding under the clearly erroneous standard, to mention facts in the record that the bankruptcy court did not specifically mention in its written orders, if these facts bolster the bankruptcy court's factual inferences and findings.

### III.

### CONCLUSION

For the foregoing reasons, the bankruptcy court did not make an error of law when applying the totality of circumstances test. Nor, did the district court make a legal error when reviewing this finding.

We cannot say when looking at the entire evidence we are "left with a definite and firm conviction that a mistake has been committed." *Id.* at 309 (citations and quotation marks omitted). Accordingly, the bankruptcy court's finding of lack of good faith under Section 1307(c) was *not* clearly erroneous, and, consequently, the district court did not err when it upheld the bankruptcy court's dismissal of Love's Chapter 13 petition for lack of good faith. Therefore, we affirm the district court judgment.

AFFIRMED.