**In re Wallace G. FERRELL and Maureen A. Ferrell, Debtors.**

**Bankruptcy No. 97–447–RLB–13.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

March 5, 1998.

■

Michael J. Hebenstreit, Kroger, Gardis & Regas, Indianapolis, IN, for the creditors/Kempski's.

Michael J. Siegel, Indianapolis, IN, for debtor.

Robert A. Brothers, Indianapolis, IN, Chapter 13 Trustee.

## ENTRY ON MOTION TO DISMISS CHAPTER 13 PROCEEDINGS

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Objection to and Rejection of Amended Chapter 13 Plan ("Objection to Plan"), filed by Emily Kempski and John Kempski (the "Creditors") on March 31, 1997, and on the Motion to Dismiss Chapter 13 Proceedings ("Motion to Dismiss"), filed by the Creditors on September 9, 1997. A hearing on the Objection to Plan and Motion to Dismiss was held on February 19, 1998. The Court, having reviewed the Objection to Plan, the Motion to Dismiss, and the matters presented at the February 19, 1998 hearing, now makes the following Entry.

### Facts

Wallace G. Ferrell and Maureen A. Ferrell (the "Debtors") filed a petition under Chapter 13 on January 17, 1997.

Prior to the petition filing, in the fall of 1993, the Debtors leased certain premises (the "Real Property") from the Creditors, consisting of six acres and the house thereon. The lease (the "Lease") that the Debtors executed provided, *inter alia*, that the Debtors were to maintain the Real Property in a

reasonable condition, that the Debtors were to pay for all utility usage, that the Debtors were not to use the unattached garage, and that there were to be no pets on the property.

The parties' business relationship eventually deteriorated, and the Debtors moved out of the house. When the Creditors regained possession of the Real Property in February of 1996, the house and acreage had sustained severe damage. The Creditors sued the Debtors in state court for the damage to the Real Property. The state court found that the Real Property had been damaged in the amount of $15,942.49 by the Debtors,[1] and gave the Creditors a total judgment, including treble damages, of $48,527.47. The state court found, *inter alia*, that

> 9. . . . the damage inflicted on these premises was not of the character to have been caused by normal use of residential property. That the violations of use and trespass upon property and damage to the interior of the premises was of a reckless, knowing and intentional nature, suggesting on occasion, angry and malicious damage to the property with indifference to the rights of the Plaintiffs. That the lease violation uses [sic], the conversion of assets of the Plaintiffs, and the reckless infliction of damage to these premises constitutes a violation of Indiana Code 35–43–1–2; Criminal Mischief, and/or Criminal Trespass, and as such, these damages are subject to statutory penalties provided in I.C. 34–4–30–1 of three times actual damage, plus court costs and a reasonable attorneys fee.

Creditor's Exhibit "A", pp. 3–4.

At the February 19, 1998 hearing, the Creditors testified that the Real Property

---

1. The state court found that the Debtors had caused severe damage to the house, including pet damage, holes in the walls and doors, broken glass and window frames, broken locks and door frames, burns in the carpet, water damage from missing plumbing parts, water damage from frozen and burst water pipes, damage to the fireplace lining and supporting structure, smoke damage throughout the house, damage to closet door fixtures, damage to light fixtures, torn vinyl flooring in several rooms, and damage to the stove exhaust fan.

 The state court further found that the Debtors had caused severe damage to the acreage on which the house was located. The Debtors had maintained a commercial fire wood cutting operation on the property. The state court found that the Debtors had cut trees that belonged to the Creditors, and had driven heavy vehicles over the property, causing the Creditors to have to re-grade, regravel, and reseed substantial portions of the property.

 The state court further found that the Debtors had damaged a vintage automobile owned by the Creditors, and that the Debtors had damaged and used the unattached garage, contrary to the provisions of the Lease.

cannot be rented or sold in its current condition, and that they will have to spend a total of $20,000 to restore the Real Property to the condition it was in prior to the Debtors' possession.

Some evidence was presented at the February 19, 1998 hearing, regarding the Debtors' current income and expenses. Mr. Ferrell testified that he had recently quit a job at Bradford Forest Products that he had held for over 20 years. Mr. Ferrell made $9.15 per hour at Bradford Forest Products, and worked approximately forty hours per week. Mr. Ferrell now makes $7.50 per hour, and works up to forty-nine hours per week. Mr. Ferrell further testified that when he quit his job at Bradford Forest Products, he received a distribution of approximately $1,800 from his 401(k) plan, but did not disclose the distribution to the Chapter 13 trustee.

There was extensive discussion at the February 19, 1998 hearing regarding Mr. Ferrell's trash-hauling business, and the number of hauling jobs per year that Mr. Ferrell performs. Mr. Ferrell testified that he reported no income from the hauling business on his federal tax return for 1996, but then amended his return in January of 1998 to reflect that he had earned $350 from hauling trash in 1996. After extensive questioning by counsel for the Creditors, Mr. Ferrell admitted that in 1996, he had done more than just the one hauling job reported on his amended return, and that he would have to amend his 1996 tax return again. Mr. Ferrell further admitted that for an extended period of time, he had spent $80–$90 per week for ads in local newspapers to advertise his hauling business. *See* Creditor's Exhibits "C" and "D". Mr. Ferrell admitted that in the last two years he ran ads in two local newspapers for a total of 142 times.

Some evidence was presented regarding the expenses listed on Schedule J of the Debtors' petition. The Debtors listed expenses on Schedule J for several emancipated children who are living with the Debtors, and who do not contribute any monies to payment of household expenses. Also listed on the Debtors' Schedule J are two subscriptions for cable television totaling $65.00.

The Debtors filed an amended Chapter 13 plan (the "Plan") on March 18, 1997. In the Plan, the Debtors propose to pay a 21% dividend to their creditors. The Debtors propose to include in their Plan any net proceeds they receive from a personal injury lawsuit that Mrs. Ferrell is pursuing for a slip-and-fall injury. At the February 19, 1998 hearing, the Debtors offered no evidence concerning the merits of the lawsuit, the extent to which the defendant may be held liable for the injury to Mrs. Ferrell, and the value of the lawsuit in terms of the potential net recovery to the Debtors.

### Legal Analysis

The Creditors argue that the Debtors' petition should be dismissed, as having been filed in bad faith. The Creditors further argue that the Debtors' Plan should not be confirmed, because due to the Debtors' overstatement of expenses and understatement of income, the Plan does not meet the Section 1325(b) "disposable income" test.

#### a) Dismissal for Bad Faith

 11 U.S.C. Section 1307(c) provides that a Chapter 13 petition may be dismissed for "cause":

> (c) ... on request of a party in interest ... and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause....

The Seventh Circuit has held that lack of good faith can be sufficient "cause" for dismissal of a Chapter 13 petition. *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992), citing *In re Smith*, 848 F.2d 813, 816 (7th Cir.1988).

In the *Love* case, the Seventh Circuit affirmed the lower courts' dismissal of the debtor's Chapter 13 petition for lack of good faith. The Seventh Circuit based its decision on the debtor's undisputed prepetition tax protest activity, and on the Court's conclusion that the debtor had filed a Chapter 13 petition for the purpose of avoiding a substantial portion of his federal tax liability. The Seventh Circuit described the good faith standard as follows:

Having already determined that good faith under Section 1307(c) should be determined by looking to the totality of the circumstances, the next question becomes what factors are appropriately considered under this test.... [T]he focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions.

. . . .

Keeping in mind that the focus of the inquiry is fundamental fairness, the following nonexhaustive list exemplifies some of the factors that are relevant when determining if a Chapter 13 petition was filed in good faith: the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy courts and the creditors.

*Love,* 957 F.2d at 1356–1357.

The Court turns first to an examination of the nature of the debts that the Debtors are attempting to discharge. In their petition, the Debtors list unsecured debts totaling $59,684, including the $49,000 debt owed to the Creditors, eight medical debts totaling $1,533, and sixteen other unsecured debts totaling $9,151. Not only are the Kempskis the primary creditor (82% of the unsecured debt), but the debt owed to the Kempskis would have been nondischargeable under Chapter 7.[2] In discussing the inclusion of nondischargeable debts in a Chapter 13 petition, the Seventh Circuit has said that

Bankruptcy is a remedy based in equity.... As such, the good faith standard prevents debtors from manipulating the Code for wrongful purposes. In accordance with this principle, this court stated in *Schaitz* that 'the requirement of good

faith should not be interpreted to permit manipulation of the statute [Chapter 13] by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a nondischargeable debt.' *Schaitz.*

*Love,* 957 F.2d at 1358–1359 (citations omitted). Here, given the size of the debt to the Kempskis, and the nondischargeable nature thereof, the evidence points to the conclusion that the Debtors filed their petition in order to avoid, at minimal cost, the nondischargeable debt owed to the Creditors.

The Court next examines the Debtors' failure to disclose the full amount of their income to the Chapter 13 trustee and to the Court. Mr. Ferrell exhibited extreme forgetfulness and evasiveness when questioned regarding his trash-hauling business. At one point in his testimony, Mr. Ferrell said that he only did hauling jobs "once, maybe twice" a year, but when pressed, he admitted to doing hauling jobs "four, five, maybe six" times a year. Mr. Ferrell's testimony that his hauling business generated little or no income, is refuted by his admission that he spent approximately $90 per week, for a total of 142 weeks, on ads for his business. It is not credible that Mr. Ferrell would spend such large sums on advertising, to generate only four, five, or six jobs a year, at fifty dollars per job. That amount of work would not begin to pay for the advertising expenses that Mr. Ferrell admitted he incurred in advertising his hauling business. Additionally, in a taped telephone conversation, Mr. Ferrell admitted to a private investigator that "he did a lot of hauling", and that "you wouldn't believe how many shingles I hauled last year". *See* Creditor's Exhibit "H".

All the evidence points to the conclusion that the Debtors have not been forthcoming with respect to their income. As the Seventh Circuit stated in *Love,* a debtor's motive for filing can be inferred from post-petition conduct. Here the Debtors' omissions and misstatements regarding their income point to a

---

**2.** 11 U.S.C. Section 523(a)(6) provides that a debt for "willful and malicious injury by the

debtor" is not discharged by a debtor's Chapter 7 discharge.

**710**

motive for filing that does not comply with the spirit of the Bankruptcy Code.

 In reviewing the totality of the circumstances, the Court is mindful that the inclusion in a Chapter 13 petition of a debt nondischargeable in Chapter 7, is not sufficient, standing alone, to constitute bad faith.

> That a debt would be nondischargeable under Chapter 7 . . . is not alone sufficient as a matter of law to constitute bad faith. . . . 'Although the debtor's motive in invoking Chapter 13 solely to obtain discharge of a . . . non-dischargeable debt, as well as the circumstances under which that debt arose, may be factors to consider as part of the totality of the circumstances, they cannot, as a matter of law, suffice to show bad faith.'

*In re Smith,* 848 F.2d 813, 818 (7th Cir.1988) (citations omitted). Where, however, the inclusion of a nondischargeable debt is coupled with other factors pointing to bad faith, a review of all the factors taken together can lead to the conclusion that the purpose of the Bankruptcy Code is being subverted by the debtor's Chapter 13 filing. Having reviewed the totality of the circumstances, this Court can only conclude that the Debtors' filing is not "fundamentally fair" to the Debtors' creditors, does not comply with the spirit of the Bankruptcy Code's provisions, and should be dismissed.

*b) Denial of Confirmation for Failure to Meet the Disposable Income Test*

■ The Court further finds that confirmation of the Plan should be denied, based on the Debtors' failure to pay all of their disposable income to their creditors. In their petition, the Debtors have understated their income, and have overstated their expenses, by including expenses for supporting adult children, and for cable television. For the foregoing reasons, the Debtor's Plan does not meet the Section 1325(b) disposable income test, and should be denied confirmation.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the Motion to Dismiss be, and hereby is, GRANTED.

Bankruptcy Case 97–447–RLB–13 is hereby DISMISSED effective March 5, 1998.