In re Donna M. **KERSCHNER**, Debtor.

**Darlene Andrews, Executrix of the Estate of Betty McGowan, Movant,**

v.

**Donna M. Kerschner and Charles J. DeHart, III, Trustee, Respondents.**

**Bankruptcy No. 5–98–00032.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

March 28, 2000.

Robert C. Nowalis, Doran & Nowalis, Wilkes–Barre, PA, for movant.

John DiBernardino, Lehighton, PA, for debtor/respondent.

Charles DeHart, III, Hummelstown, PA, trustee.

## OPINION[1]

JOHN J. THOMAS, Bankruptcy Judge.

Donna M. Kerschner (Debtor) filed for bankruptcy under Chapter 13 on January 6, 1998. The matter presently before this Court is a Motion of Darlene Andrews (Creditor), Executrix of the Estate of Betty McGowan, to Dismiss. Andrews asserts that Debtor's filing was made in bad faith and should be dismissed because it was filed to defeat the Orphans' Court Order and without any reorganization purpose.

▆▆ The Third Circuit held that "lack of good faith in [a Chapter 13] filing is sufficient cause for dismissal under section 1307(c)." *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996). It is the discretion of the bankruptcy court to determine good faith on a case-by-case basis looking at the totality of the circumstances. *Id.* Some factors that may be taken into consideration to determine good faith are:

the nature of the debt . . .; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id.* (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992)). Primarily, an analysis of good faith allows the bankruptcy court to determine " 'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter].' " *In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992) (quoting *In re Rimgale*, 669 F.2d 426, 431 (7th Cir.1982)).

### "[T]he nature of the debt"

▆▆ The debt is in the nature of a decision by Judge Richard W. Webb, Orphans' Court Division of the Court of Common Pleas of Carbon County, ordering the return of cash and personal property that Debtor acquired prior to and after the death of Betty McGowan. *In re McGowan*, 18 Fiduc.Rep.2d 13, ·No. 96–9173, Court of Common Pleas of Carbon County, Pennsylvania, Orphans' Court Division (Sept. 3, 1997). The Orphans' Court held that Debtor wrongfully converted this cash and personal property of Betty McGowan to herself and third-parties. *Id.* at 5–9.

### "[H]ow the debt arose"

The debt arose pursuant to the Orphans' Court Decree Nisi issued on September 3, 1997, where the Debtor was ordered to:

1) file an accounting of all transactions conducted for Decedent [Betty McGowan] pursuant to or since the existence of the Power of Attorney, including all transfers of Decedent's property;

2) return to the Estate Decedent's cash and personal property acquired pursuant to or since the existence of the Power of Attorney,

3) reimburse the Estate for lost interest at the legal rate and for penalties charged by First Valley Bank for the closing of Decedent's accounts in the amount of $352.75; and

4) pay costs related to the filing and hearing of this Petition.

*Id.* at 9. The Decree Nisi was finalized on September 25, 1997.

### "[T]he debtor's treatment of creditors both before and after the petition was filed"

Prior to filing under Chapter 13 and subsequent to the Orphans' Court Order of September 3, 1997, Debtor acted with total disregard to Creditor's interest in the Estate money by purchasing goods for herself and third-parties. For the purpose of applying the *Lilley* factors, this Court is only concerned with the Debtor's purchases in willful disobedience of the Or-

---

1. Drafted with the assistance of Mark R. Owens, Law Clerk.

phans' Court Order [2] relating to Darlene Andrews, Executrix of the Estate of Betty McGowan (Creditor).

I find the following purchases are material in the determination of bad faith: Debtor paid numerous tax bills on September 11, 1997, September 15, 1997, and September 16, 1997; purchased eye glasses for herself on October 6, 1997; purchased a 1996 Polaris Magnum 4x4 all terrain vehicle for her 13 year old grandson on October 15, 1997; and purchased a chocolate lab puppy for her grandson that resided with her in December of 1997. (Deposition of August 17, 1998 at 45–52.) These purchases subsequent to the September 3, 1997 Orphans' Court Order are material to my weighing of the *Lilley* factors because it was at this point that the debt arose.

2. At the Deposition of Donna M. Kerschner (Debtor), taken on Monday, August 17, 1998, Debtor was asked questions regarding the Orphans' Court Order.

Q Ma'am, do you recall that the Court order as follows, after a nine page decision, it ordered you to file an accounting of all transactions conducted for the decendent (sic), which is your aunt, pursuant to or since the existence of the power of attorney including all transfers of decendent's (sic) property.
A Yes.
Q Did you ever do that?
A No.
Q Do you recall that the state court reported (sic) you to return to the estate decendent's (sic) cash and personal property acquired pursuant to or since the existence of the power of attorney?
A Yes.
Q Did you ever do that?
A No.
Q Do you recall that the Court ordered you to reimburse the estate for lost interest at the legal rate and for penalties charged by First Valley bank for the closing of decendent's (sic) accounts in the amount of 3 hundred, 52 dollars and 75 cents?
A Yes.
Q Did you ever do that?
A No.
Q Do you recall that the Court ordered you to pay costs related to the filing and hearing of this petition?
A Yes.
Q Did you ever do that?
A No.

The Debtor, being aware of the Orphans' Court Order, had the resources to satisfy part of the debt with remaining Estate money, but continued to wrongfully spend the Estate money.

The Debtor also made numerous purchases with the decedent's money prior to the September 3, 1997 Orphans' Court Order. Even though these purchases were held to be wrongful by the Orphans' Court, they are not material to my determination of whether the Debtor filed in bad faith. When the Debtor made these purchases she was under the belief that the money was hers.

It is bad enough that the Debtor disobeyed the Orphans' Court Order, but the Debtor acted while contemplating bankruptcy.[3] This disobedience combined with

Q Why didn't you comply with the court order?
A I—most of the money was gone and I didn't have it to give back.
(Deposition of August 17, 1998 at 67–69).
Q In September of 1997, did you have any understanding as to whether or not it was important to do what a judge ordered you to do?
A I guess.
Q And Judge Webb ordered you to do certain things.
A Yes.
Q And you deliberately chose not to do that.
A Yes.
Q And did you really care what he told you to do, or did you just do what you wanted to do?
A Well, I cared and did what I wanted to do, I guess.
Q Despite what the Court ordered you to do.
A Yeah.
(Deposition of August 17, 1998 at 99–100).

3. At her Deposition of August 17, 1998, Debtor was asked questions concerning when she first thought of filing for bankruptcy.

Q When did you begin—when did you first have your thought—first thought of filing bankruptcy?
A When they wanted the money back and I spent a lot of it and didn't have it to give back.
Q When Judge Webb wrote his decision in September . . .
A Yes.

the continued spending of the remaining estate money and the contemplation of bankruptcy is consistent with a finding of bad faith.

### "[T]he timing of the petition"

■ The Orphans' Court issued a Decree Nisi on September 3, 1997, which was finalized on September 25, 1997. The Debtor intentionally failed to satisfy this Court Order. On November 28, 1997, Creditor filed a motion to hold Debtor in contempt for Debtor's failure to obey the Order. As a result, the Orphans' Court scheduled contempt proceedings for January 7, 1998. The Debtor responded on January 6, 1998, by filing under Chapter 13. Filing for relief the day before the contempt hearing is strong evidence that the Debtor filed purely to defeat state court litigation, thus violating the "spirit of the Chapter." *In re Chinichian,* 784 F.2d 1440, 1445 (9th Cir.1986). However, the mere act of filing the day prior to the state court hearing in itself does not amount to bad faith warranting the dismissal of the Debtor's Chapter 13 petition. It is important to also take into consideration the Debtor's motive behind filing for relief with the timing of the petition.

### "[T]he debtor's motive in filing the petition"

The Debtor, being aware of the consequences of disobedience,[4] deliberately chose not to comply with the Orphans' Court Decree Nisi or Final Order and continued to spend money to which she was not entitled. (Deposition of August 17, 1998 at 99–100.) As mentioned earlier when analyzing the Debtor's treatment of creditors before and after the petition, the Debtor willfully continued to spend estate money that increased her debt while contemplating bankruptcy.

### "[H]ow the debtor's actions affected creditors"

Apart from not receiving money that is rightfully the property of the estate of Betty McGowan, Creditor was deprived of interest on the money for approximately 2½ years, suffered a decrease in the amount of money as a result of early withdrawal penalties, and also forced to pay costs relating to the defense of the bankruptcy. *In re McGowan,* 18 Fiduc.Rep.2d 13, No. 96–9173 (Sept. 3, 1997).

### "[W]hether the debtor has been forthcoming with the bankruptcy court and the creditors"

There were three omissions of assets on Debtor's initial schedules that would suggest that the Debtor was not forthcoming to this Court and creditors. The Debtor did not list approximately two acres of property in Lehighton at Highland Hills, rental income from her son, and a life insurance policy. (Deposition of August 17, 1998 at 85–97.) There is no evidence to support that these omissions were more than a mere oversight, thus, it is not material in my determination of bad faith.

■ Taking into consideration the totality of the circumstances and weighing the *Lilley* factors, it is for this Court to decide whether or not the Debtor filed in bad faith. "The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir. 1995). Furthermore, "a bad faith attempt

Q You started thinking of bankruptcy?
A Yes.
(Deposition of August 17, 1998 at 72).

4. At the Deposition, Debtor was also asked questions relating to the contempt proceedings.
Q Do you recall that at some point in time a petition for contempt was filed in the Cardon County action?
A Yes.

Q And what did you understand the petition for contempt to involve?
A That they were going to take me back to Court.
Q And do what?
A Try to get the money.
Q Or what?
A Put me in jail.
(Deposition of August 17, 1998 at 70).

to use and abuse Chapter 13 for a greedy and unworthy purpose" should not be tolerated. *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986). "Bankruptcy is a remedy based in equity." *In re Love*, 957 F.2d 1350, 1358–59 (7th Cir.1992). "As such, the good faith standard prevents debtors from manipulating the Code for wrongful purposes." *Id.*

Applying and weighing the factors taken from *Lilley*, this Court finds that the Debtor filed for relief under Chapter 13 of the Bankruptcy Code in bad faith. It is based on this finding of bad faith that the Motion of Darlene Andrews, Executrix of the Estate of Betty McGowan, to Dismiss is granted.