In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2149

IN RE:  EDWIN R. SMITH,

Debtor-Appellee.

APPEAL OF:  JERRY WATSON

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 00 C 44--Sarah Evans Barker, Judge.

ARGUED NOVEMBER 5, 2001--DECIDED APRIL 11, 2002

  Before BAUER, POSNER and RIPPLE, Circuit
Judges.

  RIPPLE, Circuit Judge.  Jerry D. Watson
appeals from the decision of the district
court affirming the bankruptcy court's
confirmation of Edwin R. Smith's Chapter
13 plan. Ms. Watson contends that Mr.
Smith filed his Chapter 13 reorganization
plan in bad faith and, therefore, that he
should have been denied discharge. For
the reasons set forth in this opinion, we
affirm the judgment of the district
court.

I

BACKGROUND

A.  Facts

  Edwin R. Smith is a Certified Public
Accountant who, in the late 1980s,
fraudulently induced Jerry D. Watson to
loan $75,000 to William Compton. Mr.
Smith claimed, falsely, that Ms. Watson's
investment was secured by real property
owned by Compton. Mr. Smith, using the
power of attorney conferred on him by Ms.
Watson, also used her credit cards to
their limit, took out a mortgage against
her home and put her in debt to her life
insurance company. Mr. Smith also
borrowed $6,000 from Ms. Watson to buy
his daughter a car; he has not repaid the
loan.

  Ms. Watson brought an action in a state
court in Kentucky to recover the loan

proceeds that had been fraudulently taken. The jury awarded her a judgment of $197,247.88, including punitive damages; that judgment was later affirmed on appeal. With interest, the judgment is now worth about $267,000. Ms. Watson domesticated the judgment in the Circuit Court of Harrison County, Indiana, where Mr. Smith resides.

B.  Bankruptcy Court Proceedings

In March 1999, Mr. Smith filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Ms. Watson filed an adversary proceeding challenging the dischargeability of Mr. Smith's debt to her. On July 22, 1999, the bankruptcy court granted Ms. Watson's motion for summary judgment and declared that Mr. Smith's debt was nondischargeable because of Mr. Smith's fraudulent representations and his fraud while serving as Ms. Watson's fiduciary. See 11 U.S.C. sec. 523(a)(2) & (4).

Mr. Smith then filed this Chapter 13 proceeding and a reorganization plan ("the Plan"). Ms. Watson is Mr. Smith's only remaining creditor. Under the more liberal rules of Chapter 13, Mr. Smith's debt to Watson is dischargeable, subject to certain limitations, which will be discussed below. Ms. Watson again filed an adversary proceeding, arguing that "the plan is not proposed in good faith, that the income has been underreported, that the expenses have been overstated, and that there is more money available to pay on this plan than the debtor is indicating." Bankruptcy Tr. at 5.

The bankruptcy court held an evidentiary hearing regarding Ms. Watson's objection to confirmation of the Plan. The focus of the hearing was Ms. Watson's charge that Mr. Smith had padded his expenses in the Plan and underreported his income. Ms. Watson's counsel cross-examined Mr. Smith, suggesting that he claimed household expenses that were not characterized properly as such, that he failed to estimate properly his income over the course of the five-year Plan and that his wife's income was not properly documented. The court also examined Mr. Smith. Ms. Watson presented documentary evidence in support of her claims.

Ms. Watson also testified, describing Mr. Smith's fraudulent conduct while he was serving as her fiduciary. Ms. Watson described her precarious financial condition, made more difficult by Mr. Smith's fraud, which had deprived her of much of her savings. She also testified that Mr. Smith "remarked to me after I found out what he had been doing, that he knew how to make it that I would never be able to collect a dime from him. . . . I don't think he's done it in good faith." Bankr. Tr. at 67-68. Ms. Watson's counsel argued that "with the fraud that was involved in this particular debt, I think you ought to hold the debtor to a very high standard of proof that he really does spend each month what he claims to spend each month. . . . [T]here comes a point where you're padding your expenses so bad that your Chapter 13 plan just isn't a good faith plan." Bankr. Tr. at 72-73.

After hearing the evidence, the court, ruling from the bench, adjusted, and then confirmed, Mr. Smith's Chapter 13 plan. The court stated, "I just have to make sure that this debtor puts all [his] disposable income into the plan." Bankr. Tr. at 76. The original Plan called for payments of $200 per month; the court accepted this number for the first five months of the Plan. After that period, however, Mr. Smith would pay $250 per month for the next seven months, then $300 per month for a year, and then $350 per month for the final three years of the Plan. As adjusted, the Plan would increase Mr. Smith's payments to account for any pay raises he receives. After describing these adjustments, the court concluded that "[b]ased upon payment of that [adjusted] level, the Court would find that the plan as submitted is proposed in good faith." Bankr. Tr. at 79. The bankruptcy court issued a written order, using a pre-printed form, which confirmed the details of the Plan as amended at the hearing./1

C.  District Court Proceedings

Ms. Watson appealed to the district court; she argued that the bankruptcy court had erred in concluding that the Plan was filed in good faith. Ms. Watson submitted to the district court that the disparity between the amount of her state judgment with interest, $267,000, and the

amount of the proposed pay out, around $20,000, and Mr. Smith's pre-petition actions were evidence that the Plan was filed in bad faith. After examining the record made in the bankruptcy court, the district court concluded that Ms. Watson had not raised this latter argument before the bankruptcy court and therefore had waived the right to make it in appellate proceedings. The district court then determined that there was insufficient evidence to support Ms. Watson's claim that the bankruptcy court had determined erroneously Mr. Smith's financial situation and thereby had confirmed a plan with too low a payout. The district court affirmed the judgment of the bankruptcy court on these grounds.

II

DISCUSSION

We apply the same standard of review to the bankruptcy court's decision as did the district court. The bankruptcy court's findings of fact are reviewed for clear error, see In re Generes, 69 F.3d 821, 824-25 (7th Cir. 1995); its conclusions of law are reviewed de novo, see Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994). A bankruptcy court's determination that a plan was filed in good faith is a factual finding; therefore, we shall reverse only if the court's finding was clearly erroneous. See In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992).

We cannot accept the district court's determination that Ms. Watson's good faith argument had been waived by her failure to raise it in the bankruptcy hearing. Ms. Watson, in both her written objections and her counsel's argument at the hearing, objected to confirmation of Mr. Smith's Plan on the ground that it was not filed in good faith. She based her objection on three grounds. First, Ms. Watson pointed to Mr. Smith's pre-petition conduct, including his fraudulent conduct and a statement he made to her that he had arranged things so as to preclude her from recovering her judgment against him, as evidence of his bad faith. The bankruptcy court had some of the records from the fraud trial and was aware of Mr. Smith's conduct, having previously held that this debt was nondischargeable in Mr. Smith's Chapter 7

proceeding. Second, Ms. Watson contended that Mr. Smith's plan was in bad faith because of the low amount of the pay out, relative to the overall debt. Third, Ms. Watson argued that Mr. Smith was padding his expenses, understating his income and had structured his assets in such a way as to prevent her from recovering what she was owed.

We note at the outset that the obligation of good faith is imposed on the debtor at two stages of a Chapter 13 proceeding. First, the debtor must file his petition for Chapter 13 bankruptcy in good faith. See In re Love, 957 F.2d at 1354-55. Second, the debtor must file his Chapter 13 plan in good faith. See id.; In re Schaitz, 913 F.2d 452, 453 (7th Cir. 1990); see also 8 Lawrence P. King et al., Collier on Bankruptcy, at 1325-13 (15th ed. 2001). At different times, and at different places in her brief to this court, Ms. Watson has objected to a finding of good faith both in filing the petition and the Plan.

In our earlier cases, we have read 11 U.S.C. sec. 1307(c), which provides for dismissal of a Chapter 13 provision "for cause," to include a dismissal premised on a debtor's bad faith in filing the petition. See In re Love, 957 F.2d at 1354; In re Smith, 848 F.2d 813, 816 n.3 (7th Cir. 1988). Although Ms. Watson has not cited sec. 1307(c), her brief to this court asks us to reverse the bankruptcy court and conclude that neither the petition nor the Plan was filed in good faith. Most of her brief focuses on whether Mr. Smith's Plan was proposed in good faith, as did almost all of the bankruptcy hearing.

We turn first to the petition. On this record, only Mr. Smith's pre-petition conduct bears on his good faith in filing the petition. Ms. Watson has not pointed toward anything leading up to bankruptcy that would point to a finding of bad faith other than Mr. Smith's fraudulent conduct with respect to the underlying debt./2 We have held that simply availing oneself of the more liberal provisions of Chapter 13 to discharge a debt that is not dischargeable in Chapter 7 is not sufficient to constitute bad faith. See In re Smith, 848 F.2d at 819. We therefore shall focus our examination on whether the bankruptcy court clearly

erred in its determination that the Plan was filed in good faith.

Before a bankruptcy court confirms a debtor's plan under Chapter 13, it must find that the plan was filed in good faith. See 11 U.S.C. sec. 1325(a)(3). "The provisions of 11 U.S.C. sec. 1325 ensure that a Chapter 13 plan . . . will be properly scrutinized by the bankruptcy court before the plan is confirmed, mitigating the danger of abuse." In re Young, 237 F.3d 1168, 1174 (10th Cir. 2001). In considering whether a plan is filed in good faith, the court asks of the debtor: "Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" In re Schaitz, 913 F.2d at 453. "At base, this inquiry often comes down to a question of whether the filing is fundamentally unfair." In re Love, 957 F.2d at 1357. Whether a plan or petition is filed in good faith is a question of fact based on the totality of the circumstances surrounding the proposed plan. See In re Smith, 848 F.2d at 817-18.

We have articulated several factors that courts should consider in analyzing the totality of the circumstances. See In re Rimgale, 669 F.2d 426, 432 (7th Cir. 1982)./3 Several of those factors are relevant to our inquiry in this case. We consider whether the plan accurately reflects the debtor's financial condition and affords substantial protection to un secured creditors. If there are inaccuracies, we consider whether these flaws are "an attempt to mislead the bankruptcy court," id.; we also consider whether the plan, taken as a whole, indicates "a fundamental fairness in dealing with one's creditors," In re Bassak, 705 F.2d 234, 237 (7th Cir. 1983) (quoting Rimgale, 669 F.2d at 432-33). In applying this last factor, we suggested in Rimgale that "the bankruptcy court may wish to examine the timing of the bankruptcy filings, the proportion of the total unsecured debt that is represented by the [tort] judgment, and the equities of classifying together ordinary consumer debt and a judgment debt arising out of intentionally tortious conduct." In re Rimgale, 669 F.2d at 433 n.22. Other courts of appeals have adopted a similar approach, providing courts within their jurisdictions a non-exhaustive list of

factors to guide the good faith inquiry. See, e.g., In re Young, 237 F.3d at 1174 (quoting Flygare v. Boulden, 709 F.2d 1344, 1347-48 (10th Cir. 1983)); In re Estus, 695 F.2d 311, 317 (8th Cir. 1982). In this case we are concerned with three factors bearing on Mr. Smith's good faith, as raised by Ms. Watson: Mr. Smith's pre-petition conduct, including the nature of the underlying debt, see In re Smith, 848 F.2d at 818-19, the sufficiency of the pay out, see Flygare, 709 F.2d at 1348, and the accuracy of Mr. Smith's financial disclosures in his Plan, see In re Rimgale, 669 F.2d at 432.

Ms. Watson argues that Mr. Smith's pre-petition conduct demonstrates that his Plan was not filed in good faith. Specifically, Ms. Watson points to Mr. Smith's fraudulent behavior while serving in a fiduciary capacity and to a statement Ms. Watson alleged Mr. Smith made to the effect that he had so arranged his affairs as to preclude her from recovering her judgment against him.

"Under a 'totality of the circumstances' test, a debt's nondischargeability under Chapter 7 arising from a debtor's pre-filing conduct is relevant to the debtor's good faith." In re Smith, 848 F.2d at 818. There is no question that Mr. Smith's treatment of Ms. Watson was deplorable and it appears from this record that Mr. Smith abused the trust Ms. Watson placed in him for his own pecuniary benefit. It is also clear, if the Plan is confirmed, that Mr. Smith will not only pay far less than the $267,000 he currently owes to Ms. Watson, but will pay her less than her actual losses, unadjusted for inflation. This consideration alone, however, is not sufficient to defeat Mr. Smith's plan. Congress has made it clear that some debts, although nondischargeable in Chapter 7, may be discharged under the more liberal rules of Chapter 13. See Johnson v. Home State Bank, 501 U.S. 78, 87 (1991). We are not free to second-guess Congress' policy choice in this regard. What is required is "that the plan must be 'proposed in good faith,' not that the debt was incurred in good faith." In re Smith, 848 F.2d at 819 (emphasis in original). "[A] Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan

nevertheless represents a good faith effort by the debtor to satisfy his creditor's claims." Neufeld v. Freeman, 794 F.2d 149, 153 (4th Cir. 1986).

   Mr. Smith's pre-petition conduct, without more, is not sufficient for us to conclude that the bankruptcy court's decision is clearly erroneous. Ms. Watson contends that this case is controlled by our decision in Smith. See In re Smith, 848 F.2d at 818-21./4 The debtor, who owned and operated a home repair business, defrauded senior citizens by making unnecessary repairs. See id. at 814. The State of Indiana obtained a judgment against him for violations of the state's Deceptive Consumer Sales Act. See id. Without appealing the judgment, the debtor filed a Chapter 13 petition three months later. See id. We reversed the decision of the bankruptcy court, which had confirmed the debtor's Chapter 13 plan over the objection of a judgment creditor. See id. at 822. Specifically, we vacated the bankruptcy court's decision and remanded for further proceedings because the bankruptcy court failed to consider the debtor's pre-petition conduct in making the good faith determination. See id. at 821. We specifically declined to express an opinion on whether the plan should be confirmed on remand. See id. at 822. Smith would be of assistance to Ms. Watson only if she were able to demonstrate that the bankruptcy court failed to consider Edwin Smith's pre-petition conduct here. Although the bankruptcy judge did not make any explicit findings about the pre-petition conduct, he indicated that he was aware of the nature of Mr. Smith's debt to Ms. Watson. Further, the same bankruptcy judge had handled Mr. Smith's Chapter 7 proceeding and had granted summary judgment to Ms. Watson on her objection to discharge in Chapter 7. We therefore are confident that the bankruptcy court considered Mr. Smith's pre-petition conduct before it confirmed Mr. Smith's plan.

   Although the nature of the underlying debt, not dischargeable in Chapter 7, weighs against a finding of good faith, this factor alone cannot defeat confirmation of Mr. Smith's plan. We also take note of Ms. Watson's statement that Mr. Smith told her that he had fixed

things so that she would not recover. Without any evidence of how he had so arranged his affairs, other than the bankruptcy court's noting that Mr. Smith did not have a checking account, we cannot say that the bankruptcy court's conclusion that bad faith had not been established is clearly erroneous.

Ms. Watson next points to the low percentage repayment of her debt as evidence of Mr. Smith's bad faith. Unless he receives significant pay raises over the repayment period, Mr. Smith will end up repaying less than 10% of what he currently owes Ms. Watson. Congress has not adopted a minimum payment for confirmation of a Chapter 13 plan, and we cannot read one into the Code through its good faith requirement. See In re Rimgale, 669 F.2d at 431-32. Further, it is difficult to see how the low percentage of the payout adds anything to the other good faith factors and the other statutory requirements. The percentage repayment is a function of the size of the debt relative to the debtor's anticipated earnings; this factor is not relevant to determining whether the debtor has acted in good faith. The Code requires a debtor to commit all of his disposable income to repayment of his creditors over the term of his Chapter 13 plan. If this process, honestly and fairly undertaken, produces a payment that is a small percentage of the debt, the Code permits such a payment so long as it is "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7." 11 U.S.C. sec. 1325(a)(4).

The Sixth Circuit requires bankruptcy courts to give additional scrutiny to Chapter 13 plans that propose repayment of only a small percentage of a debt that could not be discharged in Chapter 7. See In re Caldwell, 895 F.2d 1123, 1126 (6th Cir. 1990). We have no quarrel with the proposition that a low payout is a red flag, which ought to prompt the bankruptcy court to engage in a particularly careful examination of a debtor's finances or of a creditor's challenge to the accuracy or completeness of the debtor's disclosures. We do not think, however, that the bankruptcy court can be said to have failed in that obligation here.

Ms. Watson's final contention is that Mr. Smith's Plan is in bad faith because it does not accurately describe his financial position. Chapter 13 requires that a debtor commit all of his disposable income to repayment of his debts. Disposable income is defined as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. sec. 1325(b)(2)(A). Although this mandate is independent of the good faith requirement, courts also have considered the accuracy of a debtor's financial disclosures in determining whether a debtor has dealt fairly with his creditors. Ms. Watsoncontends that Mr. Smith's Plan was not filed in good faith because he failed to accurately state his income, and because his expenses were padded to include items "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. sec. 1325(b)(2)(A). "Complete and truthful disclosure is particularly important in a Chapter 13 case because, since creditors do not vote on the plan, there is no disclosure statement as such, and parties in interest and the court must evaluate the debtor's proposal in a short period of time based on facts mostly revealed by the debtor." 5 William L. Norton, Jr., Norton Bankruptcy Law & Practice, sec. 122 at 18-19 (2d ed. 1997); see also In re Leavitt, 171 F.3d 1219, 1224-25 (9th Cir. 1999); In re Robinson, 987 F.2d 665, 668 n.6 (10th Cir. 1993) (quoting Flygare, 709 F.2d at 1348); In re Caldwell, 895 F.2d at 1126-27; In re Langguth, 52 B.R. 572, 577 (Bankr. N.D. Ill. 1985). In the seminal Seventh Circuit case dealing with the question of good faith in Chapter 13, four of the five factors/5 we enumerated as relevant to the good faith inquiry addressed the accuracy of a debtor's financial disclosures in his plan. See In re Rimgale, 669 F.2d at 432.

The bankruptcy hearing was focused on the accuracy of Mr. Smith's financial disclosures accompanying his Plan. Ms. Watson's attorney thoroughly cross-examined Mr. Smith about his income and expenses. Counsel challenged what he claimed were extraneous expenses and inquired about fluctuations in Mr.

Smith's and his wife's income over the years before bankruptcy, suggesting that Mr. Smith was being less than forthcoming about his likely income over the duration of the Plan. The court examined Mr. Smith about the alleged discrepancies in the schedules accompanying his Plan. Neither examination produced evidence of serious discrepancies in Mr. Smith's financial disclosures, but the process did raise for the court the question whether Mr. Smith was committing all of his disposable income to the Plan.

In an oral ruling, the court modified the Plan and then confirmed it. The court did so after stating that he "closely scrutinizes these cases to determine whether there--the plan is proposed in good faith." Bankr. Tr. at 75. The court was satisfied that Mr. Smith's disclosures were accurate and that his pre-petition conduct did not warrant denial of confirmation: "I just have to make sure that this debtor puts all [his] disposable income into the plan." Bankr. Tr. at 76. Taking all of the information adduced at the hearing into account, the bankruptcy court, in confirming the Plan, increased Mr. Smith's payout from $200 per month for the duration of the Plan to $300 per month for the second year and $350 per month for the final three years of the Plan. Finally, the court said: "Based upon payments of that level, the Court would find that the plan as submitted is proposed in good faith." Bankr. Tr. at 79.

One could argue that implicit in the court's above-quoted conclusion is a belief that the Plan as submitted by Mr. Smith was not in good faith and that it was only upon adjustment by the court that the Plan's payout was sufficient to meet the good faith test. Or one could suppose that the court believed that Mr. Smith was padding his expenses, or understating his income, and adjusted the Plan accordingly. If the court did so believe, it would have been within its discretion to deny confirmation of the Plan. The likely result would have been to return the issue to Mr. Smith, to permit him to file an amended plan and then to return to court to seek confirmation. Essentially, the bankruptcy court skipped that intermediate step and adjusted the Plan in light of the information before him. Mr. Smith did not

object to the Plan as adjusted by the court. Ms. Watson does not invite our attention to any evidence ignored or improperly weighed by the bankruptcy court. Our review of the evidence indicates no clear error on the part of the bankruptcy court.

The bankruptcy court's adjustment of the Plan forecloses Ms. Watson's good faith challenge. In order for Ms. Watson to prevail, she would need to combine the evidence of Mr. Smith's pre-petition conduct with any discrepancies in Mr. Smith's financial disclosures in the bankruptcy court. The court's action increasing Mr. Smith's payout under the Plan compensates for any irregularities or understatements in Mr. Smith's proposed Plan and precludes a determination on our part that the bankruptcy court erred.

Conclusion

The bankruptcy court's conclusion that Mr. Smith's plan was proposed in good faith was not clearly erroneous. Therefore, the decision of the district court to affirm its judgment must be upheld.

AFFIRMED

FOOTNOTES

/1 Ms. Watson suggests that this case ought to be remanded for further fact-finding by the bankruptcy court. Although appellate review is facilitated by detailed findings, particularly on a fact-specific issue like good faith under the Bankruptcy Code, see In re Schaitz, 913 F.2d 452, 455-56 (7th Cir. 1990), failure to include a written opinion does not warrant an automatic remand. Ms. Watson had the opportunity to bring forward evidence of Mr. Smith's bad faith at the evidentiary hearing. There is no need for further fact-finding because there is no indication in the record that the bankruptcy court's decision was clearly erroneous.

/2 Some cases have held that close temporal proximity between a debt coming due and a bankruptcy filing indicates an effort by the debtor to avoid payment of the judgment or to forgo appeal in favor of bankruptcy. See In re Leavitt, 171 F.3d 1219, 1221, 1224-25 (9th Cir. 1999); In re Smith, 848 F.2d 813, 821 (7th Cir. 1988); In re Sanabria, 52 B.R. 75, 76-77 (N.D. Ill. 1985). Also, serial bankruptcy filings may indicate bad faith.

See In re Jackson, 91 B.R. 473, 473-75 (Bankr. N.D. Ill. 1988). Ms. Watson has made no such allegations here.

/3 In In re Rimgale, 669 F.2d 426, 432 (7th Cir. 1982), we listed the following factors as a guide to bankruptcy courts evaluating whether a plan had been filed in good faith: (1) whether the plan states the secured and unsecured debts of the debtor accurately; (2) whether the plan states the expenses of the debtor accurately; (3) whether the percentage of repayment of unsecured debts is correct; (4) whether inaccuracies in the plan amount to an attempt to mislead the bankruptcy court; and (5) whether the proposed payments indicate a fundamental fairness in dealing with creditors. See In re Rimgale, 669 F.2d at 432-33. We stressed that this list is not exhaustive.

/4 The debtor in the earlier Smith decision is not the same Mr. Smith as the party here.

/5 See note 3, supra.