**BANK ONE, NA, Appellant,**

v.

**Daniel and Holly LEUELLEN, Appellees,**

v.

**Joseph M. Black, Jr., as the standing trustee in the appellees' Chapter 13 bankruptcy proceeding,**

**In re Daniel and Holly Leuellen, Debtors.**

**No. 4:04–cv–0037–DFH–WGH Bankruptcy No. 02–93219–BHL–13.**

United States District Court, S.D. Indiana, New Albany Division.

March 16, 2005.

Lisa Koch, Anthony George Raluy, Bryant Foley Bryant & Holloway PLLC, Louisville, KY, for Bank One, NA.

Richard A. Schwartz, Kruger, Schwartz & Morreau, Louisville, KY, Daniel and Holly Leuellen.

David C. Ollis, New Albany, IN, for Joseph M. Black, Jr.

HAMILTON, District Judge.

Does 11 U.S.C. § 1329 flatly prohibit a bankruptcy court from allowing Chapter 13 debtors, acting in good faith and with court approval, to modify their confirmed Chapter 13 plan to surrender collateral to a secured creditor and to treat any deficiency as an unsecured claim? In more practical terms, should Chapter 13 debtors be required to lose their home because they can no longer pay for their car? Or may they instead, acting in good faith and with bankruptcy court approval, modify their Chapter 13 plan to surrender the car to the secured lender? The question has divided the courts that have faced it. This court finds that the modification is permissible under section 1329 where the debtors have acted in good faith and obtain bankruptcy court approval for the modification.

*Facts*

Appellees Daniel and Holly Leuellen owned a 1999 Ford Ranger, a 1999 Ford Explorer, and a 1996 Dutch mobile home in which they lived. Appellant Bank One held a security interest in the Ford Explorer. Other creditors held security interests in the Ford Ranger and their home. The Leuellens filed a Chapter 13 bankruptcy petition on September 17, 2002. Bank One opposed confirmation of the Leuellens' proposed plan, arguing that the proposed valuation of the Ford Explorer ($10,500) and interest rate (9 percent) were too low. Bank One ultimately was allowed a secured claim on the vehicle in the amount of $11,821 at a 12 percent rate

of interest. The bankruptcy court confirmed the Leuellens' Chapter 13 plan on January 8, 2003.

Within six months Holly Leuellen lost her job. Tr. of Sept. 9, 2003 at 2. At that point, the Leuellens could no longer afford to make plan payments on two vehicles and their home. On June 25, 2003, the Leuellens filed a proposed amended plan. They proposed to modify the plan to reduce the monthly plan payments from $1,025 to $620, and to surrender the Ford Explorer to Bank One as payment on its secured claim, with any resulting ·deficiency being treated as an unsecured claim.

On July 22, 2003, Bank One filed an objection to the proposed modification. After a hearing and supplemental briefing, Chief Bankruptcy Judge Basil H. Lorch, III, overruled Bank One's objection and approved the Leuellens' amended plan pursuant to 11 U.S.C. § 1329(a). Bank One has appealed to this court, arguing that section 1329(a) does not permit the modification allowed by the bankruptcy court. As explained below, this court affirms the bankruptcy court's decision to allow the modification.

### Discussion

■ The bankruptcy court's findings of fact are accepted by this court unless clearly erroneous. *In re Smith,* 286 F.3d 461, 464–65 (7th Cir.2002). The bankruptcy court's decision to approve a modified Chapter 13 plan that complies with the provisions of the statute is reviewed for abuse of discretion. *In re Witkowski,* 16 F.3d 739, 746 (7th Cir.1994).

■ The creditor here argues that allowing the debtors to surrender the vehicle and to reclassify the deficiency as an unsecured claim is contrary to 11 U.S.C. § 1329, which governs post-confirmation modification of a Chapter 13 plan. The creditor has not alleged bad faith or abusive depreciation on the part of the debtors. The creditor also has not challenged any of the bankruptcy court's findings of fact. And the creditor has not argued that the bankruptcy judge abused his discretion *if* the proposed modification is allowable at all under the terms of section 1329. The sole question—whether section 1329 permits the modification approved by the bankruptcy court—is one of law and is reviewed *de novo. Smith,* 286 F.3d at 464–65.[1]

### I. *Section 1329—Modification by Surrender of Collateral*

■ Chapter 13 of the Bankruptcy Code is designed for individuals of modest means, reliable income, and limited debts. "It enables an individual, as an alternative to the liquidation of his assets, to submit for approval by the bankruptcy court a plan for paying his creditors as much as possible over a period of years, upon completion of which he is given a discharge of his remaining dischargeable debts." *In re Crawford,* 324 F.3d 539, 541 (7th Cir.2003).

1. The creditor also argues that the bankruptcy court erred in allowing reconsideration of its secured claim under 11 U.S.C. § 502(j), which allows reconsideration of a claim for cause. As the court reads the bankruptcy court's decision, that court did not actually allow reconsideration of the claim under section 502(j) but instead only implied that such reconsideration was permissible. See Mem. Op. at 3–4. Section 502(j) provides in part that "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." The bankruptcy court made no findings of fact on the question. Because this court finds the modification here was permissible under section 1329(a), it does not reach the issue of reconsideration under section 502(j). If the modification were not permitted by section 1329(a), the court would remand this case to the bankruptcy court to determine if reconsideration of the claim under section 502(j) is warranted.

A Chapter 13 plan may make sense for debtors who have a reliable source of income and who seek to meet as much of their obligations as they reasonably can over a three to five year period. See *In re Aberegg*, 961 F.2d 1307, 1308 (7th Cir. 1992); 11 U.S.C. § 1322(d). A Chapter 13 plan must satisfy detailed statutory requirements for paying priority claims and secured claims, and for treating all unsecured creditors fairly. See 11 U.S.C. § 1322(a) & (b).

Within this context, the court turns to the controlling statutory language in section 1329, which governs post-confirmation modification of Chapter 13 plans. Section 1329(a) defines the modifications permissible under section 1329:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

Section 1329(b)(1) establishes that several Code provisions that govern an original plan also govern post-confirmation modifications under section 1329(a):

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to

any modification under subsection (a) of this section.[2]

Examining these provisions shows that the statute permits post-confirmation modification allowing surrender of collateral in satisfaction of a secured claim.

Section 1322(b)(8), which is one of the referenced sections, states that the plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." This option contemplates surrender of collateral as a form of payment, and section 1322(b) applies without qualification to modifications under section 1329(a).

■ Under section 1325(a)(5)(C), also applied to section 1329(a) by subsection (b)(1), a debtor may choose to surrender property securing a claim prior to confirmation. Some courts have held, and the creditor here argues, that this provision is not a "requirement" of section 1325(a) because it is only one of three options. Therefore, runs the argument, section 1325(a)(5)(C) is not incorporated into section 1329(a) by subsection (b)(1), which expressly applies "the requirements of section 1325(a)" to modifications under section 1329(a), but does not apply the choices allowed under section 1325(a)(5). *E.g., In re Wilcox*, 295 B.R. 155 (Bankr.W.D.Okla. 2003) (denying similar modification to allow surrender of collateral). This interpretation of the statute is not persuasive.

Section 1325(a) states that: "A plan shall be confirmed if—." The following subsections (1) through (4) state singular requirements for a plan. Subsection (5) is different. It provides for three options, but at least one must be satisfied:

(5) with respect to each allowed secured claim provided for by the plan—

---

**2.** Section 1322(a) governs mandatory plan content; section 1322(b) provides permissive plan content; section 1323(c) governs the effect of modification on original acceptance or rejection of a plan; and section 1325(a) establishes the requirements for confirmation.

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

Subsection (a)(5) is obviously a "requirement" of section 1325(a). See *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 956, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) (discussing subsection (a)(5) as among the "requirements set forth in § 1325(a)"). One of its three alternatives must be satisfied or there is no confirmation. *Id.* at 956–57, 117 S.Ct. 1879 (under section 1325(a)(5), "a plan's proposed treatment of secured claims can be confirmed if one of [the] three conditions is satisfied"). Interpreting section 1325(a)(5)(C) as merely an option and not a "requirement," and therefore not incorporated into section 1329(a) by subsection (b)(1), would mean that subsections (a)(5)(A) and (a)(5)(B) are also not incorporated into section 1329(a). What then becomes of section 1325(a)(5) as a whole? Must its requirements be satisfied at all for a modification? Is it incorporated with no content? The *Wilcox* view is too stilted and produces these odd results. The better interpretation is that section 1325(a)(5) is incorporated into section 1329(a) as among the "requirements of section 1325(a)," with the requirement being that the plan as modified must meet one of its three sub-provisions. Subsection 1325(a)(5)(C), allowing surrender of

collateral, is therefore a permissible option for modifications under section 1329(a).

Accordingly, Congress's explicit incorporation of section 1322(b) and section 1325(a) into the standards for post-confirmation modification under section 1329(a) makes clear that Chapter 13 debtors retain the option to seek court permission to modify a confirmed plan by surrendering collateral to pay a secured claim. See, *e.g., In re Jock,* 95 B.R. 75, 77 (Bankr. M.D.Tenn.1989); *In re Rimmer,* 143 B.R. 871, 876 (Bankr.W.D.Tenn.1992).[3]

There is a practical side to this conclusion, as well. As one bankruptcy court has pointed out, if section 1329(a) were interpreted to prohibit the modification in this case, the debtors could achieve the desired result by allowing the existing case to be dismissed and then filing another bankruptcy petition. *In re Hernandez,* 282 B.R. 200 (Bankr.S.D.Tex.2002) (approving post-confirmation modification to allow surrender of vehicle so that debtors could keep their home). The *Hernandez* court quoted Collier on Bankruptcy:

"Because chapter 13 is completely voluntary, the debtor may propose any modified plan that satisfies the requirements of chapter 13. *Res judicata* does not bar such modifications by the debtor; the debtor usually could achieve the same result by dismissing the case and filing a new chapter 13 case." Collier, ¶ 1329.02, at 1329–4.

If there were a dismissal followed by a second case, the only limit on the proposed surrender would be the debtor's "good faith." A debtor who allowed the case to be dismissed and then filed a second case to surrender the car and to save the home might be found to be in good faith. Since the statutory provi-

---

**3.** These decisions were disapproved in *In re Nolan,* 232 F.3d 528 (6th Cir.2000), which is discussed below in Part II.

sion applicable to modification of a chapter 13 plan (§ 1329(b)) incorporates by reference all relevant provisions relating to initial confirmation of a chapter 13 plan, it would seem appropriate to interpret the two provisions to reach the same result, rather than reading § 1329 very narrowly to create different results. In short, the same words should achieve the same result regardless of whether they are applied to plan confirmation or to plan modification.

282 B.R. at 206. As another bankruptcy court observed: "Debtors who have difficulty making plan payments should be encouraged to reduce expenses, such as by surrendering a vehicle, rather than dismissing and refiling, or simply filing a chapter 7." *In re Zieder*, 263 B.R. 114, 118 (Bankr.D.Ariz.2001).

■ When the debtor surrenders the collateral, it has the effect of transforming what had been a completely secured claim into a secured claim up to the value of the collateral, and any deficiency becomes an unsecured claim. Section 506(a) of the Bankruptcy Code governs the determination of the secured or unsecured status of a claim. Section 506(a) provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a). As the Supreme Court has explained, under section 506(a), a creditor's claim for the balance owed on collateral is "secured only to the extent of the value of the collateral; its claim over and above the value of the [collateral is] unsecured." *Rash*, 520 U.S. at 956, 117 S.Ct. 1879. Under section 506(a), if a debtor surrenders collateral upon original confirmation of a Chapter 13 plan, the creditor's secured claim is paid to the extent of the value of the collateral. Any deficiency between the balance owed and the value of the collateral survives as an unsecured claim under the plan. This stands to reason because there is no collateral left to secure the remainder of the previously secured claim.

■ As discussed above, section 1325(a)(5)(C) and section 1322(b) permit a debtor to pay a secured claim by surrendering collateral to the creditor at confirmation. These provisions may be applied through section 1329(b)(1) to modification of a confirmed plan under section 1329(a). Such a surrender of collateral would satisfy the secured claim to the extent of the value of the surrendered collateral. If the collateral had depreciated below the value of the balance owed, the result would be a deficiency. Application of section 506(a) renders the deficiency—the amount "over and above the value" of the collateral—unsecured. *Rash*, 520 U.S. at 956, 117 S.Ct. 1879.

Of course, section 1329(b)(1) applies section 1325(a) and section 1322(b) only to those modifications permitted by section 1329(a). Section 1329(a)(1) is the pertinent provision in this case. It permits modification to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." The modification proposed by the debtors fits easily within those terms of section 1329(a)(1). This modification "reduce[d] the amount of payments" on the creditor's secured claim from the amount stated in the original plan down to zero, after surrender of the collateral.

For these reasons, the court concludes that section 1329(a) by its terms permits modification to reduce payments on a se-

cured claim by surrendering collateral, so long as all other statutory requirements are met.

## II. The Creditor's Arguments and the Reasoning of In re Nolan

### A. Claims and Payments

■ The creditor here relies on *In re Nolan*, 232 F.3d 528 (6th Cir.2000), to argue that the modification here is beyond the scope of section 1329(a)(1). *Nolan* is the sole circuit court decision addressing the issue in this case, and it supports the creditor's position.

In *Nolan*, as here, the debtor sought to modify a confirmed plan so as to surrender depreciated collateral (a vehicle) as payment on a secured claim, and to designate any deficiency as an unsecured claim. The court in *Nolan* found that a bankruptcy court may never authorize such a modification under section 1329(a). The court held that section 1329 by its terms permits a debtor to modify only the amount or timing of payments but not to modify claims. "This section does not state that the plan may be modified to increase or reduce the amount of *claims*. This is of significance in relation to secured claims.... [T]he terms 'claim' and 'payment' have two different meanings in the Bankruptcy Code." *Id.* at 534 (emphasis in original; citation omitted).

The *Nolan* court explained that the Code defined "claim" as a "right to payment." *Id.* at 535, citing 11 U.S.C. § 101(5). While "payment" is not defined in the Code, it is, according to the court in *Nolan*, used consistently throughout the Code in a way that reflects "the ordinary common law meaning of the term 'payment,' which is 'the delivery of money or other value by a debtor to a creditor.'" *Id.*, citing Black's Law Dictionary 1129 (6th ed.1990). Reclassifying any deficiency from the surrendered vehicle from se-

cured to unsecured status would amount to reducing the secured claim. According to the court in *Nolan* and the creditor here, this modification would amount to an alteration of rights not expressly permitted by section 1329(a).

Building from the foundation of *Nolan*, the creditor cites *In re Witkowski*, 16 F.3d 739, 745 (7th Cir.1994), for the proposition that, if the modification at issue is not expressly permitted by section 1329(a), it is prohibited. In *Witkowski*, the trustee sought post-confirmation modification of a Chapter 13 plan to increase the payments to unsecured creditors. The debtor opposed modification, but the bankruptcy court allowed it and the Seventh Circuit affirmed the modification. The debtor had argued that, absent a substantial change of circumstances, the doctrine of *res judicata* barred modification under section 1329. The debtor warned that otherwise bankruptcy courts would be "inundated with motions to modify resulting in great instability in the plan and the creditor's position." *Id.* In language emphasized by the creditor here, the Seventh Circuit rejected the argument because "modifications under § 1329 are not limitless.... Rather, by the express terms of the statute, modifications are only allowed in three limited circumstances" to accomplish the results covered by section 1329(a)(1), (2) and (3). *Id.*

The creditor argues that since the debtors' proposed modification would alter its *claim*, as opposed to the amount or timing of *payments* under the plan, *Nolan* means the modification was not authorized by section 1329(a). And according to the creditor's interpretation of the Seventh Circuit's language in *Witkowski*, since modifications are allowed only as expressly authorized by section 1329, the debtors' proposed

modification should not be allowed.[4]

▮ The Seventh Circuit has taught that district courts should give "most respectful consideration" to the decisions of other courts of appeals and should follow them whenever they can. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (Seventh Circuit and district courts should bear in mind "the interest in maintaining a reasonable uniformity of federal law and in sparing the Supreme Court the burden of taking cases merely to resolve conflicts between circuits"). At the same time, the Seventh Circuit's decisions show that it expects district courts to consider decisions of other circuits critically, and not merely to follow them by rote. *E.g., Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923, 928 (7th Cir.2000) (reversing district court that had followed other circuits on unpersuasive interpretation of statute).

This court has considered *Nolan* carefully, and respectfully disagrees with its interpretation of section 1329(a) as forbidding in all cases modifications like the one in this case. This modification allows Chapter 13 debtors who experience a dramatic change in their income, and who act in good faith and with the bankruptcy court's approval, to surrender collateral to the secured creditor, to treat any deficiency as an unsecured debt, in order to avoid liquidation under Chapter 7 and to continue making payments to creditors.

In concluding that such modifications fall outside the terms of section 1329, the *Nolan* court distinguished between a

claim, as a creditor's *right* to payment, and the payments themselves. The former, according to *Nolan*, may not be altered by post-confirmation modifications under section 1329. As Chief Judge Lorch wrote in the bankruptcy court here, such reasoning "ignores the import of other companion Code sections and reads an exception into section 1329 which simply does not exist." Mem. Op. at 3. Section 1329(b)(1) enumerates several provisions of the Code which "apply to any modification under subsection (a) of this section." Among these provisions is section 1323(c) which provides:

> Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, *unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification,* and such holder changes such holder's previous acceptance or rejection.

11 U.S.C. § 1323(c) (emphasis added). "It seems clear, therefore, that the drafters of section 1329 envisioned that the rights of secured claim holders may be affected by post-confirmation modifications." Mem. Op. at 3.

Chief Judge Lorch was correct. Section 1323(c) and its express application to section 1329(a) undercut the reasoning of *Nolan* on this point. A secured creditor's rights in general may be affected by a modification. The language of the statute does not support a holding that the partic-

---

**4.** The creditor also argues that section 1327(a) imposes *res judicata* on the confirmed plan so as to bar the modification. Bank One Br. at 3. Section 1327(a) provides that the "provisions of a confirmed plan bind the debtor and each creditor." However, the Seventh Circuit explained in *Witkowski* that Congress "provided a mechanism to change

the binding effect of § 1327 when it passed § 1329 to allow modifications.... [and] did not intend ... *res judicata* to apply to § 1329 modifications." 16 F.3d at 745. The creditor concedes that section 1327 is no bar if the debtors' proposed modification is permitted by section 1329. Bank One Br. at 3–4.

ular right at issue here is an implied exception.

With due respect to the *Nolan* court, the debtors' proposed modification does not fall outside the express terms of section 1329 merely because it affects the creditor's claim, *i.e.*, its right to payment. The modification proposed by the debtors is expressly permitted by the terms of section 1329(a)(1). The debtors' modification, though it affected the creditor's secured claim, did so by "reduc[ing] the amount of payments" on the creditor's secured claim from the amount stated in the original plan down to zero, after surrender of the collateral. *Witkowski*'s characterization of section 1329 as limited to its express terms therefore does not present the conclusive obstacle envisioned by the creditor in this case.

### B. *Individualized Treatment of Secured Creditors*

■ Permitting the reduction of payments on a secured claim gives rise to an additional question arising from the language of the statute. Section 1329(a)(1) permits reduction of payments on "claims of a particular class." The modification at issue did not reduce payments to other secured claim holders in the plan—in particular, the creditors whose claims were secured by the debtors' home and their other vehicle. Some courts have found that such disparate treatment of secured claims violates section 1329(a)(1) because the provision refers to claims of a particular *class* and therefore "does not permit individualized treatment of class members." *In re Sharpe*, 122 B.R. 708, 710 (E.D.Tenn.1991); accord, *In re Klus*, 173 B.R. 51, 60 (Bankr.D.Conn.1994).

The more persuasive view, however, is that each secured creditor should be considered as a separate class, permitting the debtor to treat each secured creditor individually. In *In re Wittenmeier*, the court explained:

> [E]ach secured creditor is in a separate class. Each thus can be treated differently and separately. This is apparent when it is recognized each secured creditor has different collateral or different priorities in collateral. [Section] 1322(b)(2) provides the plan may modify the rights of secured creditors. Thus, the Code recognizes and permits the classification of secured creditors.

4 B.R. 86, 87 (Bankr.M.D.Tenn.1980); accord, *In re Powell*, 15 B.R. 465, 478 (Bankr.N.D.Ga.1981) ("The Code does not require that all secured claims receive equal treatment. Where each such claim is secured by different collateral or has a different priority in the same collateral it can be treated differently and separately.") (footnote omitted).

In *In re Rimmer*, 143 B.R. 871 (Bankr. W.D.Tenn.1992), one of the decisions rejected by *Nolan*, the court explained:

> This Court has always understood that each secured creditor was a separate class of the plan. In fact, that is the only approach to plan formulation that complies with the Code. Section 1322(a)(3) requires that "if the plan classifies claims, [it shall] provide the same treatment for each claim within a particular class." This plan clearly classifies claims, referring to secured and unsecured creditors. The plan can only be read as having two separate secured classes because it provides a different treatment for each secured creditor.

*Id.* at 874. The district judge in the underlying case in *Nolan* found the above-quoted language in *Rimmer* to be persuasive. *Chrysler Financial Corp. v. Nolan*, 234 B.R. 390, 394 (M.D.Tenn.1999). Also, with the qualification that it was not necessarily always true, the district judge "agree[d] with *Wittenmeier* that each se-

cured creditor 'can be treated differently and separately [as] each secured creditor has different collateral or different priorities in collateral.'" *Id.* at 393, quoting *Wittenmeier,* 4 B.R. at 87. The Sixth Circuit in *Nolan* acknowledged the lower court's agreement "that each secured creditor can be treated differently because each is a separate class of the plan given unique individualized treatment under section 1322(a)(3)," but pointed out that the lower court "did not agree that such treatment means each secured claim is always separately classified." 232 F.3d at 532 n. 6.

In this case, the debtors' plan clearly classifies claims, referring to secured and unsecured claims. Under section 1322(a)(3), "if the plan classifies claims [it shall] provide the same treatment for each claim within a particular class." The debtors' plan provides for different treatment—different collateral and different interest rates—for each secured creditor. Thus, it separately classifies each secured claim. That individual treatment is not barred by section 1329(a)(1). Each secured creditor's claim is a "claim of a particular class." Under section 1322(b)(2), a plan may "modify the rights of holders of secured claims," and so, under section 1329, a plan modification may do the same, so long as all other statutory requirements are met, including good faith.

## C. *Allocation of Risk and the Debtors' Good Faith*

The *Nolan* court and the creditor here have argued that Congress could not have intended to expose creditors to the risk posed by modifications of this type. The creditor offers various arguments in support of this position.

First, according to the creditor, section 1325(a)(5)(B) protects creditors by *requir-ing* surrendered collateral to be "not less than" the value of the creditor's secured claim. That is incorrect. As discussed above, section 1325(a)(5) is the requirement, and its sub-provisions—including (5)(B)—are alternate ways to meet the requirement.

At original confirmation, the present value of a secured claim is safeguarded by section 1325(a)(5), which states as a requirement of confirmation that one of three circumstances must exist: (5)(A) the creditor accepts the plan; or (5)(B) the creditor retains the lien on collateral held by the debtor, and the value of the collateral at confirmation "is not less than the allowed amount of [the secured] claim"; or (5)(C) the collateral is surrendered. These are alternatives, any one of which will permit confirmation. See *Rash,* 520 U.S. at 956–57, 117 S.Ct. 1879 (under section 1325(a)(5), "a plan's proposed treatment of secured claims can be confirmed if one of [the] three conditions is satisfied").

The debtor's option in (5)(B) to retain secured collateral is expressly qualified by a requirement that the present value of the collateral "is not less than" the amount of the claim (*i.e.,* the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the collateral). The option under (5)(C) to surrender collateral is not subject to that same limitation.

Of course, permitting debtors to surrender collateral after confirmation under section 1325(a)(5)(C) presents a risk to the creditor of loss from depreciation, in excess of any depreciation absorbed by the creditor through a "cram-down" upon original confirmation. The creditor here argues that it is unlikely that Congress intended that section 1329(a) be used to "shift the burden of depreciation of collateral on the secured creditor." Bank One Br. at 13; accord, *In re Banks,* 161 B.R.

375, 378 (Bankr.S.D.Miss.1993). The *Nolan* court thought it was "unlikely" that Congress intended "to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset." *Nolan*, 232 F.3d at 533. The *Nolan* court wrote:

> We join the *Banks* court in rejecting the notion that debtors have such wide latitude to subject the creditor to their whims throughout the life of the plan.... There is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan.

*Id.* at 534.

With due respect, the *Nolan* court's choice of language—"whims," "subterfuge," and "windfall"—does not accurately present the issue. Consider this case, for example. The debtors' desire to modify their plan to enable them to make payments on their home after Mrs. Leuellen lost a good job hardly qualifies as a "whim." As for "subterfuge," any proposed modification under section 1329(a) is subject to the scrutiny of a United States Bankruptcy Judge, and there is no charge of bad faith. Nor is it accurate to describe the result as a "windfall" for debtors who seek, like the debtors here, to keep their modest home and one vehicle that allows one spouse to keep his job, to keep making payments to all creditors under the Chapter 13 plan, and to avoid liquidation under Chapter 7.

In fact, secured creditors are not as defenseless as the *Nolan* court's reasoning implies. On this point, Chief Judge Lorch aptly quoted *In re Townley*, 256 B.R. 697, 699–700 (Bankr.D.N.J.2000):

The solution is for the secured creditor to object to confirmation of the original plan unless the timing and amount of payments is at least equal to the rate of depreciation.... If a secured creditor asserts its rights in that manner under the original plan, the post-confirmation plan modification such as is proposed here will cause little or no harm to the secured creditor, since it will have received compensation under the original plan for the collateral's depreciation. Proceeding in that manner avoids the necessity to engraft a fictitious exception on to Code section 1329(a)(1).

In *In re Jock*, 95 B.R. 75, 78 (Bankr. M.D.Tenn.1989), the court observed: "Section 1325(a)(5) protects the present value of [a secured claim at the] date of the original plan. The creditor who bargains for a stream of payments through a Chapter 13 plan that is not sufficient to protect the creditor from loss in value of its underlying collateral has failed to assert his rights at confirmation."

Under section 1325(a)(5), if the debtors invoke their right to retain the collateral, the creditor has two options: the creditor may accept the plan, or it may demand that the debtors provide the creditor with payments, over the life of the plan, that will total the present value of the collateral. The creditor here asserted those rights when it objected to the original plan. It demanded and obtained a higher interest rate and a higher valuation on the collateral than the debtors had proposed. As Justice Stevens explained in *Rash:*

> Present value [under section 1325(a)(5)] includes both the underlying value and the time value of that interest. The time-value component similarly vitiates the risk concern. Higher risk uses of money must pay a higher premium to offset the same opportunity cost. In this case, for instance, the creditor was

receiving nine percent interest, well over the prevailing rate for an essentially risk-free loan, such as a United States Treasury Bond. Finally, the concern with deterioration is addressed by another provision of the Code, 11 U.S.C. § 361, which authorizes the creditor to demand "adequate protection," including increased payments, to offset any derogation of his security interest. . . .

*Rash,* 520 U.S. at 966, 117 S.Ct. at 1886 n. * (Stevens, J., dissenting) (internal citation omitted).

On the other hand, the majority in *Rash* explained: "From the creditor's perspective as well as the debtor's, surrender and retention [of collateral] are not equivalent acts," and this lack of equivalence is due in large part to the risk to the creditor of depreciation. *Rash,* 520 U.S. at 962, 117 S.Ct. 1879.

The risk of depreciation of collateral is a risk a secured creditor always bears. That is why car loans usually bear higher interest rates than home mortgages. That is also one reason why a secured creditor is entitled to seek a more favorable stream of payments at confirmation of the plan. When the secured creditor asserts those rights, it is planning for that risk that it might be receiving the collateral in lieu of future plan payments. Preventing Chapter 13 debtors from modifying their plans to surrender collateral under the circumstances here amounts to granting secured creditors a windfall in the form of insulation from a significant portion of a risk, after they have already had ample opportunity to protect themselves against it. And this protection is financed at the expense of the debtor in the form of higher rates or payments established at confirmation.

In allocating the risks as it did, Congress sought to balance the purposes of Chapter 13: to permit debtors to pay their debts and to avoid Chapter 7 liquidation, while at the same time ensuring fair distributions to their creditors. S.Rep. No. 95–989, 95th Cong., 2d Sess. 12, reprinted in 1978 U.S.C.A.A.N. 5787, 5798. The *Nolan* court's concern with preventing an unwarranted windfall to debtors upends this balance and grants a windfall to creditors by removing permanently the risk that collateral will depreciate more than expected. Nothing in the statute suggests Congress intended to relieve them of that risk entirely.

Of course, secured creditors may have legitimate concerns that debtors will abuse the collateral (not changing the oil in a car is the proverbial example) or will engage in other bad faith conduct resulting in unexpected depreciation. But the *Nolan* court's invocation of this danger as a conclusive presumption, its references to the "whims" and "subterfuges" of debtors, and its depiction of creditors as defenseless against them are not justified.

The distorted effects of this reasoning are evident in the case law. Consider, for example, *In re Jackson,* 280 B.R. 703 (Bankr.S.D.Ala.2001), cited by the creditor here for the proposition that it is the Chapter 13 debtors' responsibility to foresee all contingencies at the time the plan is confirmed. Bank One Br. at 14. The *Jackson* court prohibited a post-confirmation surrender of a vehicle. The court wrote: "This Court finds the reasoning of the Sixth Circuit in *Nolan* persuasive. The decision is a harsh one for debtors. It will force them to make decisions about the retention or surrender of vehicles before confirmation. . . . Debtors will have to be very careful in formulating plans." 280 B.R. at 705.

With all due respect, debtors proposing a Chapter 13 plan surely are not required to be so "very careful" as to assume they will be laid off of the very jobs they count

on to make payments under the plan. And surely it would make no sense to force debtors to surrender upon plan confirmation a vehicle they need to keep a job, just so the plan payments will be low enough so that the debtors can pay them if they lose that same job. Yet such results are where the reasoning of *Nolan* and *Jackson* ultimately leads.[5]

As for the risk of abuse, creditors have another important source of protection. As Chief Judge Lorch explained here, the view that a creditor who has properly asserted its rights at confirmation has received compensation in advance for the collateral's depreciation "is subject to the qualification that the modification has been proposed in good faith and, in particular, that there has been no abusive depreciation of the secured creditor's collateral." Mem. Op. at 5, quoting *In re Conley*, 2000 WL 1805324, at *4 (Bankr.E.D.Va.2000); accord, *In re Day*, 247 B.R. 898, 903 (Bankr.M.D.Ga.2000) ("The requirements for postconfirmation modifications, which include a good faith requirement, have the needed protection to ensure that secured claimants are adequately protected.").

Section 1325(a)(3), which expressly applies to any modification under section 1329(a), states that a court shall confirm a plan if, "the plan has been proposed in good faith and not by any means forbidden by law." The Seventh Circuit has stated that in evaluating good faith under section 1325:

the court asks of the debtor: "Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" *In re Schaitz*, 913 F.2d 452, 453 (7th Cir.1990). "At base, this inquiry often comes down to a

question of whether the filing is fundamentally unfair." *In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992). Whether a plan or petition is filed in good faith is a question of fact based on the totality of the circumstances surrounding the proposed plan. See *In re Smith*, 848 F.2d 813, 817–18 (7th Cir.1988).

*In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002).

The good faith requirement and the requirement of court approval in an adversarial judicial system provide important checks against debtors indulging their "whims" or engaging in the "subterfuges" feared by the *Nolan* court. See, *e.g., In re Young*, 237 F.3d 1168, 1174 (10th Cir.2001) ("The provisions of 11 U.S.C. § 1325 ensure that a Chapter 13 plan ... will be properly scrutinized by the bankruptcy court before the plan is confirmed, mitigating the danger of abuse."); see also *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982) (good faith determination requires a bankruptcy court to "inquire whether the debtor has misrepresented facts in his plan unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner"). The good faith inquiry is a required inquiry. "Before a bankruptcy court confirms a debtor's plan under Chapter 13, it must find that the plan was filed in good faith." *Smith*, 286 F.3d at 466. Because the good faith requirement of section 1325(a)(3) applies to a modification after plan confirmation, see 11 U.S.C. § 1329(b)(1), secured creditors have the continued protection of that court-enforced requirement.

Finally, a court's required exercise of its discretion on the question of good faith exists within its broader overall discretion

**5.** For more detailed rebuttals to the reasoning of *Nolan*, see Lawrence P. King, et al., 8 Collier on Bankruptcy ¶ 1329.04[1], 1329–8 through 1329–9 (15th ed. rev.2004), Keith M. Lundin, 3 Chapter 13 Bankruptcy § 264.1 (3rd. ed. 2000 & Supp.2004), and *In re Zieder*, 263 B.R. 114, 117–19 (Bankr.D.Ariz.2001).

under section 1329(a) ("the plan *may* be modified") (emphasis added). See *Witkowski*, 16 F.3d at 746 ("[A]ll proposed modifications need not be approved and in practice not all modifications are approved.... [M]odification under § 1329 is discretionary"). This discretionary judgment also offers creditors additional protection if there is reason to believe the proposed modification would be abusive.

In this case, the debtors became unable to make payments under their original plan on two vehicles and their modest home. Permitting them to avoid Chapter 7 liquidation by allowing them to surrender one vehicle to the secured creditor is consistent with both the statutory language and the broader policies of bankruptcy law. According to the House Report on the comprehensive 1978 amendments to the Bankruptcy Code, "The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13 ... and finally, ... bankruptcy relief should be effective, and should provide the debtor with a fresh start." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. at 117–18 (1977), reprinted in 1978 U.S.C.A.A.N. 5787, 6078.

*Conclusion*

In this case there has been no allegation of bad faith or abusive depreciation. The post-confirmation modification to allow surrender of collateral is consistent with section 1329(a) and other relevant provisions in the Bankruptcy Code. The result is also consistent with the bankruptcy policy adopted by Congress, and it is eminently practical. The result also does not offer a windfall to debtors, especially in light of a creditor's rights at initial confirmation under section 1325(a)(5), courts' required case-by-case scrutiny of a debtor's good faith, and the courts' broader discretion under section 1329(a). Accordingly, the decision of the bankruptcy court overruling Bank One's objection to the Leuellens' modification of their Chapter 13 plan is affirmed.

So ordered.